**In the Matter of Angus M. MacNEIL.**
**Petition of Anthony JULIAN, United States Attorney.**
**No. 5491 Original.**

United States Court of Appeals
First Circuit.
April 22, 1959.

Angus M. MacNeil, Somerville, Mass., pro se.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for petitioner.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The United States Attorney for the District of Massachusetts has initiated this proceeding by filing a petition asking us to issue to Angus M. MacNeil, Esq., an order requiring him "to show cause, if any there be, why he should not be removed from the office of attorney and counsellor of this Honorable Court and why his name should not be stricken from its rolls, or why he should not be suspended from the office of attorney and counsellor of this Honorable

Court." The petition recites that the said MacNeil had been admitted to the Massachusetts bar on April 27, 1932, and the bar of this court on October 4, 1945; that on March 10, 1959, Mr. Justice Harold P. Williams of the Supreme Judicial Court of Massachusetts had entered judgment, pursuant to findings of fact and order already on file, "that Angus M. MacNeil be, and he is hereby, removed from the office of attorney at law"; and that "by reason of these premises the said Angus M. MacNeil is now unfitted to continue as an attorney or counsellor of this Court under its Rule 7 [28 U.S.C.]" We entered our show-cause order pursuant thereto on March 20, 1959.

In this court we have had repeated experience with the litigious qualities of Angus M. MacNeil, almost exclusively in his own behalf or as attorney for various corporations which he controls.[1] We have had numerous opportunities to initiate disbarment proceedings against MacNeil on account of actions in proceedings before this court, but we have overlooked such misconduct, without condoning it or waiving any appropriate action, perhaps due to a soft-hearted and misguided sympathy with an individual who sometimes seemed to be wholly irresponsible. The latest of these episodes occurred in No. 5453, MacNeil Bros. Company v. Cohen, 1 Cir., 264 F.2d 186, decided by us March 3, 1959 in which, in a preposterous motion asking us to transfer an appeal pending here to the Court of Appeals for the Second Circuit, MacNeil made a particularly unjustified attack upon the impartiality and integrity of the members of this court.

But when we learned of the judgment of disbarment rendered in the state court, we felt we had to take some action pursuant to Rule 7 of the rules of this court. Accordingly, we requested the United States Attorney to investigate the circumstances of the state disbarment, and then to file the petition upon which our show-cause order was based. We did not undertake to suspend MacNeil "forthwith" as seems to be required by our Rule 7, as it is by the correspond-

---

1. The following Court of Appeals, First Circuit, cases involved Angus M. MacNeil as attorney, litigant, or both: Docket No. 3973, MacNeil v. Bailen, Trustee, 1944, 143 F.2d 230; No. 4702, Garden Homes, Inc. v. United States, 1952, 200 F.2d 299; No. 4727, Garden Homes, Inc. v. United States, 1953, 207 F.2d 459; No. 4786, Garden Homes, Inc. v. United States, 1954, 210 F.2d 281; No. 4999, MacNeil v. Gargill, Trustee, 1956, 231 F. 2d 33, certiorari denied 1956, 352 U.S. 833, 77 S.Ct. 50, 1 L.Ed.2d 53; No. 5003, MacNeil v. Gargill, Trustee, order dismissing appeal entered October 27, 1955; No. 5047, MacNeil v. State Realty Co. of Boston, Inc., 1956, 229 F.2d 358; No. 5094, MacNeil v. United States, 1956, 236 F.2d 149, 61 A.L.R.2d 1075, certiorari denied 1956, 352 U.S. 912, 77 S. Ct. 150, 1 L.Ed.2d 119; No. 5099, Garden Homes, Inc. v. Mason, 1956, 238 F.2d 651; No. 5110, Garden Homes, Inc. v. Mason, 1956, 238 F.2d 654; No. 5192, MacNeil Bros. Co. v. Justices of the Superior Court, 1957, 242 F.2d 273, certiorari denied 1957, 355 U.S. 805, 78 S. Ct. 48, 2 L.Ed.2d 49; No. 5262, Garden Homes, Inc. v. Mason, 1957, 249 F. 2d 71, certiorari denied 1958, 356 U.S. 903, 78 S.Ct. 562, 2 L.Ed.2d 580; No. 5277, Handy Cafe, Inc. v. Justices of the Superior Court, 1957, 248 F.2d 485, certiorari denied 1958, 356 U.S. 902, 78 S. Ct. 561, 2 L.Ed. 580; No. 5286, Boston Development Corp. v. State Realty Co. of Boston, Inc., 1957, 249 F.2d 442; No. 5313, MacNeil v. Orlov, order dismissing appeal entered December 24, 1957; No. 5329, MacNeil Bros. Co. v. Forte, 1958, 253 F.2d 500; No. 5337, MacNeil v. Gray, order dismissing appeal entered March 25, 1958, certiorari denied 1958, 358 U.S. 827, 79 S.Ct. 45, 3 L.Ed.2d 67; No. 5340, Boston Development Corp. v. State Realty Co. of Boston, Inc., order dismissing appeal entered March 25, 1958; No. 5381, M. A. Owens Co. v. Gargill, Trustee, order dismissing appeal entered July 31, 1958, certiorari denied 1958, 358 U.S. 903, 79 S.Ct. 237, 3 L.Ed.2d 230; No. 5410, Martin-Edward, Inc. v. United States, order dismissing appeal entered October 21, 1958; No. 5413 Original, In re MacNeil Bros. Co., 1958, 259 F.2d 386; No. 5440, MacNeil Bros. Co. v. State Realty Co. of Boston, Inc., 1959, 262 F.2d 364; No. 5453, MacNeil Bros. Co. v. Cohen, two opinions, March 3 and March 5, 1959, 264 F.2d 186; 264 F. 2d 190.

ing provision of Rule 8 of the Rules of the Supreme Court of the United States, 28 U.S.C. (346 U.S. 954), since such action seemed unnecessary at that time.

Although our show-cause order of March 20, 1959, fixed the date of Thursday, April 9, 1959, for an oral hearing on the petition for disbarment "if said Angus M. MacNeil shall indicate in his said answer his desire to do so, then and there to make any statement or presentation concerning any relevant matter expressly set forth in his said answer", the answer filed by MacNeil to the petition for disbarment contained no such request for an oral hearing.[2] However, pursuant to a subsequent motion filed by MacNeil on April 6, 1959, we entered an order granting leave to respondent "to appear before this Court at 11 o'clock A.M. on Thursday, April 9, 1959, to make any statement or presentation concerning any relevant matter 'expressly set forth in his said answer' and clearly within the definition of good cause appearing in Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585". At the same time the order of this court concluded with the following:

"As to that portion of said motion for a hearing which seeks 'issuance of process to witnesses', summonses duces tecum to clerks of Massachusetts state courts, without specifying records, documents or cases, but presumably meaning the unidentified 'filed papers in certain cases', other than No. 1439 the disbarment proceeding, as claimed by respondent in his motion for enlargement to have been sequestered by certain members of the judiciary, and there being no showing that such unidentified documents are intrinsic records properly relevant herein, It is ordered that the request for issuance of such summonses be, and the same hereby is, denied."

MacNeil did appear before us on April 9, and was accorded a full hearing. At

that time sworn testimony was given by MacNeil and by an assistant to the attorney who represented the Boston Bar Association at the disbarment proceeding. Also, numerous exhibits were received in evidence, most of which were introduced by MacNeil.

We realize full well that disbarment from practice before a federal court does not necessarily follow automatically from a state court judgment of disbarment. See Selling v. Radford, 1917, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585; Theard v. United States, 1957, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342. But as emphasized by the Supreme Court in the above-cited cases, we do not sit to review the judgment of the state court. In Selling v. Radford, supra [243 U.S. 46, 37 S.Ct. 378], the Court pointed out that, though the state court's order of disbarment is not binding upon a federal court "as the thing adjudged in a technical sense", nevertheless, the necessary effect of the judgment of disbarment by the state court "as long as it stands unreversed, unless for some reason it is found that it ought not to be accepted or given effect to, has been to absolutely destroy the condition of fair private and professional character, without the possession of which there could be no possible right to continue to be a member of this Bar." (243 U.S. at page 50, 37 S.Ct. at page 378) Continuing, the Court said 243 U.S. at page 51, 37 S.Ct. at page 379:

"that we should recognize the condition created by the judgment of the state court unless, from an intrinsic consideration of the state record, one or all of the following conditions should appear: 1. That the state procedure, from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part

2. MacNeil failed to verify his answer, as required by the terms of our show-cause

order, but we ordered the answer filed notwithstanding this deficiency.

that we could not, consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do."

■ At the oral hearing before us, MacNeil contended that we should regard the state court judgment as a nullity because, at the hearing upon which it was based, MacNeil had been denied due process of law. In this connection there is not the slightest doubt that MacNeil received notice of the state court proceeding; indeed he appeared before Justice Williams and engaged in presenting the testimony of at least one witness in his own behalf and in cross-examining witnesses presented on behalf of the moving Boston Bar Association. Furthermore, he filed so many motions and repetitious "demands" (numbering about twenty-five) that finally, in self-defense, Justice Williams on January 14, 1958, entered an order "that no further papers be filed in this proceeding, except with the prior approval of the Court". In fact, some twenty-nine papers seem to have been filed by MacNeil even after this order.

MacNeil also claimed that the state proceeding did not afford him due process, because Justice Williams was a defendant in an action brought by MacNeil. Again, MacNeil has failed to prove the pertinent facts, but we understand that all the justices of the various courts of the Commonwealth, described as a class, had been sued by MacNeil. Compare MacNeil Bros. Co. v. Justices of the Superior Court, 1 Cir., 1957, 242 F.2d 273, certiorari denied 1957, 355 U.S. 805, 78 S.Ct. 48, 2 L.Ed.2d 49; Handy Cafe, Inc. v. Justices of the Superior Court, 1 Cir., 1957, 248 F.2d 485, certiorari denied 1958, 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed. 2d 580. In the circumstances, it is abundantly clear that Justice Williams was not so interested as to be disqualified from sitting in the disbarment proceeding under the Federal Constitution. Indeed, it would be a strange rule that would allow a person to obtain immunity from the courts by the simple stratagem of filing frivolous complaints joining the whole judiciary by describing all the judges as a class.

■ In support of his contention that Justice Williams had denied him due process of law, MacNeil alleged that the state court had "refused to order specifications sought by the said MacNeil and specifically denied to said MacNeil the right to plead or prove his defenses to the matters charged." With reference to the lack of specifications, it appears from an inspection of the entries on the docket of the state court proceeding, a copy of which was received as an exhibit in this case, that respondent MacNeil made a motion on December 3, 1957, for the filing of specifications, and that on January 21, 1958, specifications by the Boston Bar Association were duly filed; and though in the above-mentioned order of January 14, 1958, Justice Williams had given advance approval to the filing of a motion by respondent to strike said specifications, no such motion to strike was ever filed.

With reference to the claim that respondent had been deprived of the right to summon witnesses in his behalf, we find no substance to this assertion. The uncontested facts appear to be that MacNeil did ask the clerk of the Supreme Judicial Court to issue subpoenas for the testimony of various judges and clerks of court of the Commonwealth, and that the clerk replied to MacNeil that he should cause the subpoenas to be served himself. MacNeil testified that he did thereupon prepare subpoenas for the testimony of some of the witnesses he had in mind, namely, five of the justices of the Superior Court of Massachusetts, several of whom had decided his cases. Whether these subpoenas were ever properly served, with tender of the required witness fees, does not appear. Also, it

does not properly appear that any testimony these five judges could possibly give would be relevant to the issues before Justice Williams, even if they were not protected by judicial immunity from questioning as to their mental processes in deciding cases.

MacNeil also contends that the striking of his numerous demands for admission of facts denied him the right to disprove the charges against him. Examination of the contents of these demands, copies of which were introduced as exhibits before us, leaves little doubt that their generally irrelevant and scandalous nature would justify their being stricken. But even assuming that they were properly drawn, it seems clear that discovery procedures are not a requisite of due process of law where, as in the disbarment case, a plenary hearing is held.

As proof of respondent's claim that he had been denied due process of law in the disbarment proceeding, he submitted to us a certified copy of a petition for a writ of mandamus asked in the case of MacNeil v. Jesse W. Morton and other justices of the Superior Court of Massachusetts collectively. In this petition MacNeil complained that Justice Morton had wrongfully refused to permit him to appear and argue a case marked up for hearing before him on August 1, 1958; that this action by Justice Morton had been based upon the findings and order of Williams, J., in the disbarment proceeding; that Williams, J., had denied to MacNeil due process of law and the opportunity to plead and prove his defenses to the allegations made in the disbarment case, thereby rendering void his ensuing order of disbarment; that the evidence offered in the disbarment case "conclusively proved that the acts of the plaintiff were required by the oath of office of an attorney of the Commonwealth of Massachusetts and that far from being contrary to his sworn duties were completely in compliance with said sworn duties." It appears that an order was entered sustaining Justice Morton's demurrer to the petition for a writ of mandamus. Somehow, MacNeil seems to assume that the demurrer constitutes an admission, for all purposes and binding upon this court, of the truth of the allegations contained in the petition for a writ of mandamus, including the allegation that MacNeil had been deprived of due process of law at the disbarment hearing before Justice Williams. A first year law student would know that this assumption is untrue. Furthermore, even if there were an admission by Justice Morton, who is not a party to the present case, it would in no event establish any infirmity of the disbarment proceeding.

Incidentally, it further appears in MacNeil's petition for mandamus in that case of MacNeil v. Jesse W. Morton that MacNeil caused the disbarment proceeding pending before Justice Williams to be removed to the federal district court pursuant to 28 U.S.C. § 1441 et seq. Since MacNeil is a Massachusetts citizen and 28 U.S.C. § 1441(b) provides for the removal to the federal court of any civil action of which the federal court would have had "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States", even a child would wonder how the federal district court could possibly have original jurisdiction of a proceeding looking to disbarment of a lawyer from practice in the courts of the state. It is true that in the course of such a proceeding the respondent lawyer may raise questions based upon his rights under the Constitution of the United States. If so, then such constitutional question may be preserved for eventual review by the Supreme Court of the United States under its certiorari jurisdiction. But as the Court said in Gully v. First National Bank, 1936, 299 U.S. 109, 115, 57 S.Ct. 96, 99, 81 L.Ed. 70: "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." We undertook to set forth the distinction in Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834, at 845–46. Moreover, this purported removal was effected July 25, 1958, substantially after trial of the disbar-

ment case before Justice Williams in February had resulted in his findings and order of July 9, 1958. We fail to see how any attorney could in good faith have believed that this was within the twenty-day time limit of 28 U.S.C. § 1446(b). Misuse of the removal provisions is, however, familiar to MacNeil. See In re MacNeil Bros. Co., 1 Cir., 1958, 259 F.2d 386.

Needless to say, as appears from the aforementioned docket entries, this removed case was promptly remanded to the state court by order of District Judge Ford dated September 23, 1958.

■ As to the second of the requirements mentioned by the Supreme Court in Selling v. Radford, supra, we are satisfied that there was no such infirmity of proof of the facts Justice Williams found to have been established as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the state court's conclusion. The trial of the disbarment proceeding lasted for several days. The Boston Bar Association introduced as documentary exhibits "the original papers with the docket entries in one hundred eight cases in which the respondent appeared personally or as counsel in the Land, District, Superior and Supreme Judicial courts of the Commonwealth, copies of papers in eleven cases in the District Courts of the United States in which he also appeared, and approximately two hundred fifty letters written by him to the judges of the Massachusetts courts." The findings of fact by Justice Williams contain an elaborate recital of the innumerable lawsuits which had been instigated by MacNeil. From our own knowledge of the papers and proceedings and our own experiences with MacNeil in nine of the cases considered by Justice Williams,[3] and from the factual admissions which MacNeil made in the hearing before this court, we can well believe that Justice Williams was warranted on the facts before him to find

> "that apart from the respondent's actions against the judges he has in the period under consideration instituted and maintained an undue multiplicity of law suits regarding the matters in controversy * * *. He has repeatedly attempted to relitigate the same issues by the employment of different forms of proceedings and the substitution of different parties. He has continually pursued cases to unreasonable lengths by a stream of motions and petitions of which many related to points already settled in accordance with established practice."

We must conclude that Justice Williams was justified on the evidence adduced in the state disbarment proceeding in find-

---

3. Seven of the eleven federal cases, papers from which were received in evidence by Justice Williams, were appealed to this court and are included in the cases listed in footnote 1:

Court of Appeals

| Docket No. | District Court Docket No. |
|---|---|
| 5047 | Bankruptcy 140-55 (filed March 7, 1955) |
| 5340 | Bankruptcy 416-55 (filed June 13, 1955) |
| 5286 | Bankruptcy 824-55 (filed December 23, 1955) |
| 5094 | Civil Action 1035 (D. N.H.) |
| 5192 | Civil Action 56-675-F (D. Mass.) |
| 5277 | Civil Action 57-282-M (D. Mass.) |
| 5329 | Civil Action 57-982-S (D. Mass.) |

In addition, two of the cases brought in the state courts which were referred to by Justice Williams were subsequently removed to the federal district court, whence they came to us for appellate review. These were Suffolk Superior Court No. 71,043 Equity, which became D.Mass.Civ.Action 57-907-M and our No. 5313; and Middlesex Superior Court No. 18,671 Equity, which became D.Mass.Civ. Action 58-354-A and was reviewed by us in Nos. 5413 and 5440, 1 Cir., 259 F. 2d 386 and 262 F.2d 364. Middlesex Superior Court No. 18,671 Equity has also been docketed on another purported removal as D.Mass.Civ.Action 59-104-A, but MacNeil's appeal from a district court decision in this case has not been perfected.

ing that the charges made by the Boston Bar Association were fully proved, including the charge that "MacNeil during the period in question has followed a course of action which was calculated to bring disgrace and embarrassment to the judicial system of the Commonwealth of Massachusetts, to the members of the judiciary of the Commonwealth of Massachusetts and to the legal profession. MacNeil's activities have disrupted the orderly processes of the judicial system of the Commonwealth of Massachusetts."

With reference to the third exceptional situation mentioned by the Supreme Court in Selling v. Radford, supra, MacNeil has not suggested to us any "other grave reason", nor can we think of any, "which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do." He alleges in this respect that he was obliged by the judiciary to continue certain of the litigations later found to be vexatious; but this allegation is seemingly based only on three purported "withdrawals" (from a single case, incidentally), which motions to withdraw he put in evidence before us. Examination of these documents reveals that two of them were really attempts to "withdraw" the plaintiff as well as the lawyer—in other words, motions for voluntary nonsuit—almost two years after an interlocutory decree had been entered. These so-called motions to withdraw were denied due to MacNeil's obstinate refusal to request the required leave of court. The third "withdrawal" was denied after MacNeil ignored a notice to appear for a necessary hearing thereon.

Upon the whole case, therefore, we have determined to make an order striking MacNeil's name from the list of attorneys and counsellors authorized to practice law before this court and disbarring him from such practice in the future.

Whether there is at present available any procedure whereby MacNeil can obtain meaningful review of Justice Williams' judgment by the full bench of the Supreme Judicial Court we do not undertake to say. But there is no doubt that the judgment is final and is presently operative to disbar MacNeil from the practice of law in the courts of Massachusetts. Of course our order of disbarment will be without prejudice to any subsequent motion by MacNeil to vacate such order if he secures a reversal of Justice Williams' judgment by the Supreme Judicial Court.

In accordance with the foregoing, an order will be entered striking the name of Angus M. MacNeil, Esq., from the list of attorneys and counsellors authorized to practice law before this court and disbarring him from such practice in the future.