David Michael LIPMAN, on behalf of all
others similarly situated, Plaintiff,

v.

George VAN ZANT, Secretary of the Mississippi Board of Bar Admissions,
et al., Defendants.

No. GC 7091–K.

United States District Court,
N. D. Mississippi,
Greenville Division.

Aug. 5, 1971.

---

James A. Lewis, Oxford, Miss., for plaintiffs.

Jesse Adams, Asst. Atty. Gen., Jackson, Miss., for defendants.

Before COLEMAN, Circuit Judge, and KEADY and SMITH, District Judges.

KEADY, District Judge:

This class action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 was brought by plaintiff, David Michael Lipman, a resident of Leflore County, Mississippi, against the Secretary and members of the Mississippi Board of Bar Admissions. The complaint sought a declaratory judgment holding unconstitutional, and an injunction preventing enforcement of, Miss.Code Ann. § 8654, a statute requiring that an applicant for admission to the bar of Mississippi, in order to be eligible to take the bar examination, must reside in the state for one year preceding the date of his application. Before defendants answered, a motion to intervene and complaint in intervention were filed by Maureen Malone, a resident of Washington, D. C.,

seeking similar relief. Following answer by defendants, a three-judge district court was convened pursuant to 28 U.S.C. § 2281 because of the prayer for injunctive relief against a state statute on the ground of unconstitutionality. The case has been submitted on stipulated facts and briefs of counsel.

The defendant Board members are licensed attorneys of the state appointed to their office by the Governor from written nominations submitted by the Supreme Court of Mississippi. In accordance with a detailed statutory scheme,[1] they are empowered to admit applicants to the bar by examination as well as by transfer from other states, § 8652. The Secretary of the Mississippi State Bar serves as the Board's Secretary and is charged with the duty of disseminating information to applicants as to the prerequisites for taking the bar examination, receiving and examining such applications and also investigating all bar applicants under direction of the Board, § 8648. Anyone who desires to be examined for admission shall, at least 90 days before the regular time fixed for examination, make written application to the Board, submitting statements from three responsible citizens as to the applicant's good moral character; and the names of all applicants are published by the Board at least 10 days before the examination in a newspaper of general circulation throughout the state, § 8653. Qualifications of eligibility for an applicant are prescribed by § 8654.[2] This section,

---

1. Miss.Code Ann. §§ 8647–8684.

2. § 8654. Qualifications for admission.
   The applicant for admission to the bar, in order to be eligible for the examination for admission, shall be a citizen of the United States and an actual bona fide *resident of this state for a period of one (1) year preceding the date of such application,* above the age of twenty-one (21) years, of good moral character, and shall present to the board of bar admissions satisfactory evidence:
   1. That he has successfully completed the general course of the study of law in a law school (which may be either a day

or night school) which has been either (a) in active existence for more than ten (10) years prior to the date of the application involved, or (b) has been approved by the said board as an institution giving a general course of study of law reasonably equivalent to the study as is hereinafter required under an approved Mississippi attorney, and (c) that such applicant has received a diploma or certificate from such school evidencing the satisfactory completion of such course; or

   2. That in compliance with the provisions hereinafter set forth he has successfully pursued a general course of the

which is attacked in this case, requires the applicant to be (1) a citizen of the United States, (2) a resident of this state for one year preceding the date of the application, (3) above the age of 21 years, (4) of good moral character, and (5) present evidence of statutorily prescribed college and legal education. The Board first inquires into the applicant's moral character and qualifications, other than legal learning, and dismisses the application if the applicant is found to be disqualified, § 8655. A qualified applicant is given written examination upon a sufficient number of subjects to test thoroughly his legal learning, § 8657. The Board meets twice a year at Jackson on the first Tuesday of each March and September to conduct bar examinations for applicants, § 8661.[3] The applicant is required to pay an application fee of $50 (increased to $100 July 1, 1971) at least 90 days before the date of the bar examination, § 8662. Once the examination is completed, each subject is graded separately by the Board, and if the Board determines that the applicant satisfactorily passed the written examination in all subjects, it issues a certificate of admission, which entitles him to an order of the Chancery Court granting him a license to practice law in the courts of the state, § 8658.[4]

Lipman, 24, is a graduate of the University of Pittsburgh (B.A. 1967) and Duquesne University School of Law (J. D. June 1970). Not a member of any bar, he first moved to Mississippi in October 1970 where he was employed at Greenwood as a law clerk for North Mississippi Rural Legal Services. On November 25, 1970, he made written application, accompanied by the requisite filing fee and pertinent credentials, to take the bar examination in March 1971. The Board's Secretary on December 2 notified Lipman that the Board was "powerless to consider your application until you have been a resident of the state for one year", and returned his application, filing fee and other material.

Intervenor Malone, 26, is a graduate of Fairleigh Dickinson University (B. A. 1964) and Howard University School of Law (J.D. June 1970). She has never been admitted to practice by any bar or court. On December 6, 1970, while a resident of Washington, D. C., she presented to defendants her application for admission, filing fee and credentials, stating that she wanted "to pursue the practice of law for living in the State of Mississippi and I intend to marry a resident of Mississippi." This application on December 10 was refused by the Secretary on the ground that she did

---

study of law for a period of not less than two (2) years under the supervision of a reputable Mississippi attorney, who has actively practiced not less than five (5) years before the beginning of such course and has been approved by said board in compliance with the provisions set forth.

3. That in addition to complying with either of the above requirements, the applicant shall submit proof satisfactory to the board that he has successfully completed two (2) full years of college work, or its equivalent, in a standard college, or has graduated from a junior college, teachers college or normal school requiring two (2) full years college work for graduation or has taken and successfully passed examinations in subjects equivalent to such two (2) years course of study in a college and satisfy their requirements for credit therein.

3. Rule IX adopted by the Board of Bar Admissions pursuant to its rule-making power also provides:

Bar examination shall be held in the City of Jackson, Hinds County, Mississippi, on the first Tuesday, Wednesday, and Thursday of each March and September in accordance with the provisions of Section 8661, Mississippi Code of 1942, as amended. Such meetings shall be held at a place and time selected and determined by the Board and notification thereof will be given to applicant prior to the holding of such examinations.

4. § 8658 also provides that if an applicant passes at least one-half of the subjects on which he is examined but fails the other subjects, he shall be notified as early as practicable and thereafter required to stand examination only in those subjects in which he has not qualified.

not meet the residency requirement. Malone alleged in her intervening complaint filed January 7, 1971, that she "has received an offer to work for North Mississippi Rural Legal Services." She remained, however, a nonresident of Mississippi until June 1, 1971, by which date she had moved to Mississippi and was employed as a law clerk at Oxford.

Defendants routinely reject any application which fails to show compliance with the residency provision, and make no further investigation. That was done with the Lipman and Malone applications, and defendants have conducted no inquiry into the good moral character or educational qualifications of either applicant. Hence no issue has been raised as to the failure of either Lipman or Malone to satisfy the conditions of § 8654 apart from the residency requirement.

A requested hearing for a temporary restraining order to allow Lipman and Malone to take the March 1971 bar examination was obviated when, pursuant to agreement, both applicants were permitted to take the examination and be graded thereon, pending the outcome of this action. Lipman successfully passed all but two subjects, and is desirous of retaking the examination on those two subjects in September 1971. Malone successfully passed all but four subjects, and is desirous of retaking the examination on those four subjects. Because of the residency requirement, however, Lipman will not be eligible to take the examination until March 1972, nor will Malone be eligible until September 1972.

Plaintiff and intervenor challenge the residency requirement solely upon the ground that it contravenes the Equal Protection Clause of the Fourteenth Amendment, and assert that they have been thereby deprived of a right or privilege secured by the Constitution. We note that Lipman and other persons in his class reside in Mississippi on the date of application, while Malone and others similarly situated, are nonresidents on that date. Defendants interpose three alternative defenses: (1) This federal district court is without original subject-matter jurisdiction; (2) if jurisdiction exists, the court should abstain from exercising it because of comity considerations; and (3) § 8654 passes constitutional muster.

There can be no question, and indeed the parties agree, that we have jurisdiction as a three-judge district court under 28 U.S.C. § 2281 since the case raises substantial federal questions and seeks an injunction against the enforcement of a state's statute on the ground of its unconstitutionality.

For reasons that follow, we hold that the first and second defenses pleaded by defendants are without merit; and with respect to the third defense, we grant to Lipman and the plaintiffs in his class the declaratory and injunctive relief they seek, but deny all such relief as to intervenor Malone and other nonresidents, and dismiss finally their complaint in intervention.

## JURISDICTION

There can be no doubt that plaintiffs who are citizens of the United States are the very persons 42 U.S.C. § 1983 [5] was enacted to protect, or that defendants who are state administrative officials acting in the discharge of statutory functions are "persons" against whom the federal remedy is given.[6] And the substantive nature of the asserted constitutional claim has been clearly expounded thusly:

"A State cannot exclude a person from the practice of law or from any

---

5. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." Schware v. Board of Bar Examiners, 353 U.S. 232, 238, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (1957).

This leaves only the narrow inquiry of whether the Civil Rights Act is an appropriate vehicle for vindicating a federal claim of this nature, i. e., a state's bar admission requirement, in a United States District Court.

■ Defendants in their brief contend that "Mississippi has exclusive jurisdiction over the admission of attorneys to the practice of law within its boundaries", so that consideration of federal constitutional issues which relate to the admission, disbarment or discipline of attorneys must be confined to review by the United States Supreme Court on writ of certiorari to the state courts, and hence federal district courts are without original jurisdiction. The authorities on which defendants rely do not support the sweep of their contentions. Of course, there are many lower federal court decisions holding that a district court is without jurisdiction, despite the federal claim, to review an order or judgment of the state court disbarring or disciplining an attorney.[7] Admittedly these cases, which are merely following the ordinary rule of res judicata, bar district court review of the determination made by a state court adverse to the constitutional claim by holding the remedy for vindicating the federal right is by appellate review in the Supreme Court and not by a § 1983 action. These holdings are bottomed upon a trilogy of well-known decisions in bar admission and disbarment disputes handed down in 1957 by the Supreme Court.[8]

In *Schware,* the Supreme Court, on certiorari to the New Mexico Supreme Court, vindicated the Due Process rights of an applicant denied the right to take the bar examination by an order of the state supreme court. In *Konigsberg,* the Court, again on certiorari, upheld the Fourteenth Amendment claims of a bar applicant refused certification to practice law by an order of the California Supreme Court. In *Theard,* the proceeding in federal district court was instituted not by the disbarred attorney, but by the United States Attorney seeking to disbar Theard from federal practice on the basis of his state disbarment under an order of the Louisiana Supreme Court. The district judge entered an order of federal disbarment, apparently feeling bound by the state proceeding. Holding this was error, the Supreme Court reversed and remanded for a determination on the merits of federal court disbarment. It was in this context that Mr. Justice Frankfurter, speaking for the *Theard* court, declared:

"It is not for this [Supreme] Court, except within the narrow limits for review open to this Court, as recently canvassed in Konigsberg v. State Bar of California * * * and Schware v. Board of Bar Examiners * * * to sit in judgment on Louisiana disbarments, and we are not in any event sitting in review of the Louisiana

7. Cases denying such relief on jurisdictional grounds are: MacKay v. Nesbett, 285 F.Supp. 498 (D.C.Alaska 1968), aff'd 412 F.2d 846 (9 Cir. 1969) (court order of suspension of one year); Jones v. Hulse, 391 F.2d 198 (8 Cir. 1968) (court order of suspension for three years); Lenske v. Sercombe, 266 F.Supp. 609 (D.C.Or.1967), aff'd 401 F.2d 520 (9 Cir. 1968) (court order of disbarment); Ginger v. Circuit Court for Wayne County, 372 F.2d 621 (6 Cir. 1967), cert. denied 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998 (court or-

der of disbarment); Clark v. State of Washington, 366 F.2d 678 (9 Cir. 1966) (court order of disbarment); Gately v. Sutton, 310 F.2d 107 (10 Cir. 1962) (court order of disbarment); In re Mac-Neil, 266 F.2d 167 (1 Cir. 1959) (court order of disbarment).

8. Schware v. Board of Bar Examiners, supra; Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810; Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed. 2d 1342.

judgment." 354 U.S. at 281, 77 S.Ct. at 1276, 1 L.Ed.2d at 1344.

It will be readily perceived that the sole concern of *Schware, Konigsberg* and *Theard* was with the effect to be accorded the judgment or order of a state court relating to admission or disbarment. Most certainly, the Court did not attempt—indeed it had no occasion —to limit or otherwise narrow inferior federal court jurisdiction due to the peculiar nature of the controversy, absent a court order or even the pendency of a state judicial proceeding.

Whatever doubts have lingered as to the existence or scope of inferior court original jurisdiction, attributed to or engendered by *Theard's* language,[9] they must be dispelled by the Supreme Court's recent decision in Law Students Civil Rights Research Council v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L. Ed.2d 749 (1971), where the Court did not hesitate to weigh the First Amendment rights asserted by bar applicants in a § 1983 action, and judge the case, on direct appeal from a three-judge district court, in accordance with *Konigsberg* and *Schware* standards. In *Wadmond,* the plaintiffs were bar applicants, certified candidates having passed their bar examinations and an organized law student group, who sought federal injunctive relief against certain judge-appointed state committees and state judges administering New York's statutory plan for determining "the character and general fitness requisite for an attorney," prior to admitting to practice any person who had passed the bar examination. Plaintiffs, claiming that certain questionnaires circulated under rules and procedures adopted by

defendant officials violated their rights of free speech, sought to enjoin their use and enforcement. No order of a state court was involved. Circuit Judge Friendly, speaking ·for the three-judge district court, upheld subject-matter jurisdiction in these words:

"We fail to perceive what interest would be served by holding federal courts to be powerless to enjoin state officers from acting under a statute that allegedly deprives citizens of rights protected by the Civil Rights Act or promulgating regulations that are alleged to have that result simply because some of them are robed and others have been appointed by those who are. Rather it would ,seem anomalous that while federal courts could entertain a complaint similar to the plaintiffs' if made with respect to other licensed professions, such as medicine or accountancy, they are powerless with respect to admission to the bar." 299 F.Supp. 117, 123.

The district court in *Wadmond* then proceeded to consider the merits of the case, determining that three questions asked of bar candidates were constitutionally impermissible, but withheld injunctive relief to afford the defendants a specified time within which to revise the questionnaire. Dissatisfied with this relief, plaintiffs appealed to the Supreme Court, which affirmed. Speaking for the majority, Mr. Justice Stewart disposed of any jurisdictional issue in Note 9,[10] which merely pointed out that the defendant officials had taken no cross appeal as to their suability "as persons" under § 1983, and then adjudicated the First Amendment issue. Necessarily, the Court did not regard as a problem

9. Chaney v. State Bar of Cal., 386 F.2d 962 (9 Cir. 1967) (denying jurisdiction) ; Keenan v. Board of Law Examiners, 317 F.Supp. 1350 (E.D.N.C. 1970, three-judge court). Circuit Judge Craven in *Keenan's* reasoned opinion, stated (p. 1354) :

"Because the cases reaching the Supreme Court in recent years involving admission to a state bar, e. g. *Schware,* supra, have come up via the state courts, the Supreme Court has had no occasion to decide the scope of inferior federal court jurisdiction in such cases. Thus the application of the *Theard* doctrine to bar inferior federal court subject matter jurisdiction of claims of constitutional invalidity of bar admission requirements is not settled."

10. 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 at 755.

subject-matter jurisdiction because the dispute related to the bar admission requirements of the State of New York.

In Keenan v. Board of Law Examiners, supra, the district court concluded that it had original jurisdiction to consider a constitutional attack made upon a rule adopted by the North Carolina Board of Bar Examiners requiring an applicant to be a resident of the state at least 12 months prior to the date of his bar examination. No order of a state court being involved, the Court declined to give deference to a determination made by administrative officials, especially since the case did not concern relief to be granted to an individual person but a general requirement affecting alike a class of applicants. *Keenan's* reasoning is persuasive here since we do not find present any policy reasons requiring the deference which should be accorded the judgment of a state court. In the case sub judice, the Board acts summarily to determine residency qualifications; this is ordinarily done on the basis of information disclosed by the applicant. Indeed the Board's factual determination that Lipman and Malone do not satisfy the residency requirement is not disputed. In case of noncompliance with this requirement, § 8654 mandates denial of the application, the defendants being allowed no discretion or exercise of judgment in the matter. All applicants falling within the class, and not merely certain persons, are so disqualified. Further, the denial dictated by the statute is truly a "deprivation" of the right to take the bar examination since there is no provision for relief in the courts of the state from the factually correct determinations which defendants make in accordance with the statute. Under such circumstances we conclude that subject-matter jurisdiction exists in this case.

## ABSTENTION

■ Defendants next argue that inasmuch as § 8654 has never been construed by a state court, we should abstain from exercising jurisdiction, under the familiar *Pullman* doctrine [11] until the statute may be tested in the Mississippi courts. To abstain under *Pullman*, it must appear that the federal right is "entangled in a skein of state law that must be untangled before the federal case can proceed," [12] and abstention may be invoked "only in narrowly limited special circumstances," [13] e. g. "where the issue of state law is uncertain," [14] or where the state's statute or constitution is "susceptible of a construction that would avoid or modify" a decision on the federal constitutional issue,[15] or where unsettled questions of state law should be decided by state courts "preliminary to a federal court's consideration of underlying federal constitutional questions." [16]

In *Reetz*, the Supreme Court only recently applied the abstention principle in reversing the decision of a three-judge district court declaring an Alaska statute unconstitutional under both the federal and state constitutions. The Court noted that enmeshed with the federal questions were questions of state law based on the Alaska Constitution which had never been interpreted by the Alaska courts and ordered the district court to stay its hand while the litigants repaired to the state courts for resolution of state constitutional issues. It was recognized that the decision of a state court "could conceivably avoid any decision under the Fourteenth Amend-

11. RR Com. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

12. McNeese v. Board of Education, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622, 626 (1963).

13. Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949).

14. Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

15. Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

16. Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed. 2d 562 (1959), and Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

ment and would avoid any possible irritant in the federal-state relationship." 397 U.S. at 87, 90 S.Ct. at 790.

It is an equally well-settled rule, however, that if the state statute is clearly drawn, precise and permits of only one interpretation which cannot avoid or modify the federal constitutional question, abstention is improper, and federal courts may not defer to state courts simply to give them the first opportunity to vindicate the *federal* claim.[17] In *Zwickler*, the Supreme Court held it was error to abstain from ruling upon the constitutionality of a New York statute clear and unambiguous in its face and capable of only one construction which would not avoid or modify the constitutional question. The *Zwickler* court approvingly quoted from the opinion in United States v. Livingston, D.C., 179 F.Supp. 9, aff'd Livingston v. United States, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719, in relevant part:

"Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it."

While distinguishing *Zwickler*, the *Reetz* court nevertheless gave full approval to that decision,[18] and *Zwickler* is controlling here.

In the case sub judice, defendants do not claim or suggest that the present action can go off on state grounds, or that § 8654 is susceptible of any construction which might obviate a need of ruling on the Equal Protection argument, or even

that a determination of facts by a state tribunal may make unnecessary a decision on the constitutional issue. Indeed, the Equal Protection Clause of the Fourteenth Amendment is the sole basis of attack alleged by plaintiff and intervenor and we do not see any possibility of disposing of the case on any ground other than the federal constitutional issue.

It is important to note that the state constitution of Mississippi has no provision relevant to the case beyond a tangential reference that the state legislature is to regulate the practice in the courts of justice by general, not local, private or special, laws.[19] In its only decision on the subject of qualifications to practice law, the Supreme Court of Mississippi in Board of Com., Miss. State Bar v. Collins, 214 Miss. 782, 59 So.2d 351 (1952) held that the legislature of the state, in the exercise of its police power and also for the protection of the public, was authorized to prescribe qualifications for persons engaging in the practice of law, in addition to those prescribed by rules of court. It is manifestly clear, therefore, that the case contains no state questions, the resolution of which might be dispositive of the action, but the single issue is the validity of a clear and unambiguous statute under the federal Constitution. Given these conditions, our clear duty is not to abstain to give state courts the first opportunity to vindicate the federal claim but to consider the case on its merits.

Notwithstanding our exercise of jurisdiction, we emphasize that this holding does not embroil us in the administra-

17. Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); McNeese v. Board of Education, supra; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

18. Reetz v. Bozanich, 397 U.S. at 87, 90 S.Ct. at 790:
  "In Zwickler, a state statute was attacked on the ground that on its face it was repugnant to the First Amendment; and it is conceded that state court construction could not render un-

necessary a decision of the First Amendment question."

19. Miss. Constitution 1890, § 90:
  The legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.:
  *    *    *    *    *
  (s) Regulating the practice in courts of justice.

tive processes of bar admissions which properly belong to the defendant Board and Secretary. Our judgment goes only to the validity of a clearly separable and underlying statutory requirement, but in no way does it relate to the details or even policies for administering bar examinations. As in the *Keenan* case, there is no involvement with the methods of examination, such as the nature, quality or scope of the questioning, or the duration, timing or grading of examinations. The acts of the defendants in all such matters are not under review.

## THE CONSTITUTIONAL ISSUES

Although the Equal Protection Clause is the sole point of challenge, the two separate classes of persons represented by Lipman and Malone require different treatment leading to opposite results. We invalidate that portion of § 8654 requiring residency *"for a period of one year preceding the date of such application"*, but hold constitutional the statute's requirement for residency *at date of application.*[20]

We treat each aspect of the Equal Protection issue:

(a) *The invalid requirement for one-year residency prior to date of application.*

■ The traditional test for Equal Protection, as long established by the Supreme Court, has been summarized as follows:

"The Equal Protection Clause requires more of a state law than non-discriminatory application within the class it establishes. * * * It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all per-

sons. 'The Constitution does not require things which are different in fact * * * to be treated in law as though they were the same.' * * * Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577, 580 (1966).

The foregoing test, as applied to bar admission requirements, means:

"A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, *but any qualification must have a rational connection with the applicant's fitness or capacity to practice law.* Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590; Cummings v. Missouri (U.S.) 4 Wall. 277, 319–320, 18 L.Ed. 356, [361, 362]. Cf. Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed 940 [89 A.L.R. 1469]." (Emphasis added.) Schware v. Board of Bar Examiners, 353 U.S. at 239, 77 S.Ct. at 756.

As written, § 8654 creates two classes of bar applicants: (1) those who have resided in Mississippi for one year preceding the date of application, and (2) those who are also residents but have not resided in the state for the requisite time. Persons in the first class, if qualified otherwise, may take the bar examination, but persons in the second class, although having all other qualifications, may not. In fact, persons in

---

20. Subsequent events have placed Maureen Malone, individually, in the class for which plaintiff Lipman sues since she became a Mississippi resident on June 1, 1971. Her application is deemed resubmitted to the Board, as of that date, which will entitle her, if otherwise qualified, to take the next bar examination beginning September 7, 1971, or more than 90 days after the date of her qualifying application (§ 8653). If found to be otherwise qualified, Malone is required to be examined in all subjects as on a new application. These facts render moot Malone's individual claim as a nonresident.

the second class are denied the right to take the examination for at least 15 months after establishing residence in the state.[21] This classification, therefore, must have a rational connection with an applicant's fitness or capacity to practice law if it is to receive constitutional approval. If it is without purpose relevant to the state's interest in securing a competent bar, the grouping falls within the ban of the Equal Protection Clause.

■ Prior to 1954 Mississippi's bar residency requirement of long-standing was that the eligible applicant simply be a resident of the state, without a fixed durational period.[22] The one-year residency requirement was introduced by the passage of the "Bar Standards Act of 1954", Chap. 213, Laws of 1954. This Act, which was widely supported by the state's bench and bar, was adopted for the purpose of raising bar admission standards in the important areas of college courses and accredited law school, or other intensified legal, training. In accomplishing these praiseworthy goals, however, the legislature in one step went from the barest residential requirement to one of the most restrictive residency provisions to be found in any state of the Union.[23] Apparently only two other states, West Virginia and Hawaii, require one-year residency prior to appli-

cation. Similar requirements in North Carolina and Georgia have already been ruled unconstitutional. As previously noted in *Keenan* (ante page 397), North Carolina's invalid rule required the applicant be a resident of the state at least 12 months prior to the date of his examination. Georgia's statute, invalidated in Webster v. Wofford, 321 F. Supp. 1259 (N.D.Ga.1970, 3-judge court), required a bar applicant, after having passed the state bar examination, to be a Georgia resident for 12 months preceding the date of admission.

Defense counsel, nevertheless, strenuously urge upon us various contentions in support of a one-year residency requirement, claiming that such is legitimate to the state's interest in obtaining a capable and competent bar. We have examined each of these points and find them to be without merit, and we here take note of only the more substantial arguments. It is urged that the one-year residency requirement (a) encourages the applicant to have a stake in the community and have an interest in his own reputation, (b) enables the applicant to become familiar with local legal practice and the state's governmental structure, and (c) makes possible a more informed judgment as to the applicant's good moral character. We have no hesitancy in concluding that the one-

---

21. This is so because § 8653 requires a 90-day deadline for filing application in order to take the next bar examination.

22. For a period of 37 years, from 1917 to 1954, the forerunner of § 8654 read as follows:

"The applicant for admission to the bar, in order to be eligible for the examination for admission shall be a citizen of the United States and a resident of this state, above the age of twenty-one years, of good moral character; and shall have had, at least, a high school education or its equivalent."

Miss.Laws 1916, Ch, 107; Hemingway's Code 1917, § 182; Hemingway's Code 1927, § 182; Miss.Code 1930, § 3683; and Miss.Code Ann.1942, § 8654 (original form).

23. Open letter dated February 18, 1971, from, A. F. Summer, Attorney General

of Mississippi, to members of the Mississippi State Bar, commenting upon the present action:

"Our office has made an inquirey into the residence requirements of other states in this regard and has found the following breakdown with respect thereto: Twenty-three jurisdictions require the applicant only to be a resident at the time of application or admission; eleven jurisdictions require a six-month residency prior to application; one jurisdiction requires a nine-month residency prior to application; four jurisdictions require three months; three jurisdictions require two months; three—Mississippi, West Virginia and Hawaii, require a one-year residency prior to application; six jurisdictions, including the District of Columbia, have no residency requirement whatsoever."

year residency clause does not serve any of these objectives, nor was it designed to promote them. Indeed, in forcing a prolonged period of "basking in the Mississippi sunshine,"[24] the one-year requirement is more apt to leave the recent law graduate without any means for obtaining "a stake in the community" and in poor position to enhance his reputation as a useful member of the community. During the course of an unreasonably long residency period, the bar applicant, forced to remain a spectator and ineligible to participate, absorbs very little of the local legal practice and its customs merely by reason of proximity and often has slight, if any, contact with governmental procedures. Finally, although the need and desirability for having an informed judgment as to the applicant's moral character justifies a reasonable residence requirement, we conclude that an excessively long period of time, like one year, prior to applying for the admission, is an arbitrary and unreasonable requirement which serves no purpose other than inordinate delay. More likely, the harshness of the one-year requirement serves more to dissuade worthwhile applicants from considering practicing law in Mississippi than it does to exclude undesirable applicants. Whatever may be the correct balance, the effect of the one-year requirement is that in excluding some applicants who lack character or competence, it bars other applicants who are highly qualified for admission in an arbitrary and capricious manner. Given this unreasonable and arbitrary effect, we need not speculate or consider whether the dominant purpose of the one-year residency provision was to limit the enjoyment of the practice to the "homeborn" by excluding newcomers.

We strike down the one-year residency requirement contained in § 8654 as violative of the Equal Protection Clause, and declare that it may no longer be enforced as a prerequisite for a bar applicant.

(b) *The valid requirement of residency at date of application.*

Although moot as to Maureen Malone individually (Note 20), the complaint in intervention nevertheless poses a challenge on behalf of nonresident citizens to the validity of any residential requirement whatsoever for a bar applicant. Because of the importance of this question and the attendant public interest, we proceed to make an adjudication.

Our conclusion that the one-year residency provision is unconstitutional does not dictate that we invalidate all residential requirement for a bar applicant if it is possible to preserve such portion of § 8654 relating to residence as may be valid. "The cardinal principle of statutory construction is to save and not destroy."[25] The pertinent principle was well stated in Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 234–235, 52 S.Ct. 559, 565, 76 L.Ed. 1062, 1078 (1932), as follows:

"The unconstitutionality of a part of an act does not necessarily defeat or affect the validity of its remaining provisions. Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law. (Citing cases). Section 10 declares that the invalidity of any part of the act shall not in any manner affect the remaining portions. That discloses an intention to make the act divisible and creates a presumption that, eliminating invalid parts, the Legislature would have been satisfied with what remained. * * * "

It is to be noted that the Bar Standards Act embodying the statute under present review contained an express severability provision in case of the uncon-

---

24. Mercer v. Hemmings, 194 So.2d 579 (Fla.1967).

25. N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893, 907 (1937). Accord, Tilton v. Richardson, decided June 28, 1971, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790.

stitutionality of any paragraph, clause or part of the Act.[26] We find nothing in the Bar Standards Act, its objectives, or the antecedent history of § 8654 to suggest that the phrase requiring an applicant's residence to be "for a period of one year preceding the date of such application" is essential to the purposes of the Act, or indeed relevant to its important goal of improving educational qualifications for admission to the bar. We are confident, therefore, that there would be no basis for "assuming that the Act would have failed of passage without this provision; nor will its excision impair either the operation of the administration of the Act. * * *" Tilton v. Richardson, supra, 403 U.S. 684, 91 S.Ct. 2098. Eliminating the unconstitutional phrase "for one year preceding the date of the application", the provision in the statute that an applicant be a resident of the state when applying is a plainly divisible requirement and, if valid, should be upheld in accordance with the clearly expressed legislative intent as to the Act's severability.

Employing the same standard of equal protection, we hold that the portion of § 8654 requiring residence in the state, which is distinctly separate from and independent of the one-year durational period, has a rational connection with an applicant's fitness or capacity to practice law, and hence does not offend the Equal Protection Clause.

As previously noted, the stipulation that an applicant reside in the state when applying for admission to the bar has long existed in many jurisdictions. No doubt a state has the strongest interest in requiring persons seeking admission to its bar to live within its borders. The practice of law is a matter of right only "for one who is qualified by his learning and his moral character." Baird v. Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639, 648 (1971) (Majority opinion). Moreover, as stated by Mr. Justice Blackmun, dissenting, in Baird v. Arizona:

" * * * the State, in granting the authority to practice law, with what surely is the true privilege, not the right, to be entrusted with a client's confidences, aspirations, freedom, life itself, property, and the very means of livelihood, demands something more of the applicant than a formal certificate of completion of a course of legal study and the ability acceptably to answer a series of questions on a Bar examination. It presumably demands what fundamentally is character. *And it is character which a State holds out to the public when it authorizes an applicant to practice law.*" (Emphasis added.) 401 U.S. 20, 91 S.Ct. 712, 27 L.Ed.2d 654.

In Mississippi, the reasonable connection of residence with one's professional fitness and capacity is that it allows the defendant Secretary and Board, charged with the duty of investigating the applicant's background, moral character and education, a fair opportunity for personal interviews with the applicant and on-the-ground investigation. Since the bar examination is administered biannually, a nonresident who wishes to apply may wait until shortly before the expiration of the 90-day deadline within which to file his application. Thus, a requirement of residence at date of application does not force any citizen to become a Mississippi resident for a period of time very little more than three months prior to his taking the examination. These are, without doubt, reasonable requirements according to defendants a chance to conduct in each case a meaningful and careful investigation; they are not oppressive to the applicant. Thorough investigation into the character of a bar applicant is imperative if the state is to gen-

---

26. Miss.Laws 1954, Chap. 213, § 12:
    If for any reason any section, paragraph, provision, clause or part of this act shall be held unconstitutional or invalid, that fact shall not affect or destroy any other section, paragraph, provision, clause or part of this act not in and of itself invalid, but the remaining portion hereof shall be in force without regard to that so invalidated.

uinely represent to the public good character "when it authorizes an applicant to practice law."

Some states, it is true, have dispensed with all residency requirements and routinely conduct out-of-state investigations through national investigatory services, granting authority to their state bar officials to charge greater fees to nonresident applicants to defray the cost of out-of-state, and often distant, investigations. While a uniform plan of this type may be desirable for all states, we fail to see any constitutional bar to Mississippi's requiring the applicant to take up residence within its own borders for a reasonably short period of time prior to examination, to determine his qualifications. Moreover, under the Mississippi plan, only a small fee is charged every applicant, and the Board has no authority to increase the filing fee of a nonresident applicant to pay the greater expense incident to an out-of-state investigation. These are reasonable and legitimate provisions which impose no burden upon anyone.

Our holding in this regard is directly supported by District Judge Edenfield's opinion in Webster v. Wofford, supra:

> "This is not to say that Georgia cannot require a reasonable period of residency prior to taking the bar examination for the purpose of permitting personal interviews and investigation with respect to an applicant's background, moral character and qualifications. The State clearly has a legitimate interest in this area and may adopt reasonable requirements to further that interest. Such requirements, however, should be imposed only to the extent that they are necessary to protect the State's interest. Onerous restrictions are impermissible." 321 F. Supp. at 1262.

In *Keenan*, Circuit Judge Craven's opinion, Note 17, expressly left open a ruling upon the precise issue now before us.[27]

We are not unmindful of certain implications arising from Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed. 2d 600, where the Supreme Court gave expanded scope to the more stringent standard of Equal Protection than that traditionally employed by holding unconstitutional state residency requirements denying financial benefits to welfare recipients. Admittedly, the majority opinion sought to enlarge upon a constitutional right of interstate movement by citizens of the United States, stating that where a classification touches upon a fundamental right of that nature, "its constitutionality must be judged by the stricter standard of whether it promotes a compelling state interest." 394 U.S. at 638, 89 S.Ct. at 1333. The *Shapiro* court, nevertheless, had no occasion to apply the more stringent standard to eligibility requirements for obtaining a license to practice a profession, and expressly pretermitted the question.[28]

In view of the Supreme Court's continuing reliance on *Schware's* standards in late bar admission cases, we deem the traditional test to be the only one applicable, and that it would be incorrect to judge any aspect of this case in terms of the stricter standard mandating us, as a prerequisite to constitutionality, to ascertain either the presence of compelling state interest or the absence of pen-

27. 317 F.Supp. at 1362, Note 17:
"We express no opinion upon the constitutional validity of rules requiring residency at the time of examination or of admission or upon the validity of short term pre-admission residency requirements designed to insure personal interviews and contact with the applicant."

28. 394 U.S. at 638, Note 21, 89 S.Ct. at 1333:

"We imply no view of the validity of waiting-period or residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel."

**404**

alty upon the exercise of the citizen's constitutional right of interstate travel. Therefore, we conclude the requirement of residency at the date of application satisfies the demands of the Equal Protection Clause and withstands the challenge of nonresident persons.

Let an order issue declaring unconstitutional the one-year residency requirement of § 8654 and enjoining its further enforcement by the defendant Secretary and Board, but adjudging residency at date of application to be a constitutional requirement for bar applicants.