Clifton C. TANG, Plaintiff-Appellant,

v.

APPELLATE DIVISION OF the NEW YORK SUPREME COURT, FIRST DEPARTMENT, and Honorable Justices Aron Steuer, et al., Defendants-Appellees.

No. 537, Docket 72-2222.

United States Court of Appeals, Second Circuit.

Argued March 13, 1973.

Decided Oct. 19, 1973.

Certiorari Denied April 1, 1974.
See 94 S.Ct. 1611.

Clifton C. Tang, pro-se.

Daniel M. Cohen, Asst. Atty. Gen. of N. Y. (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen. of N. Y., on the brief), for defendants-appellees.

Before HAYS, MULLIGAN and OAKES, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, dismissing plaintiff's action for injunctive and declaratory relief under the Civil Rights Act, 42 U.S.C. § 1983. Plaintiff Tang had moved to convene a three-judge court pursuant to 28 U.S.C. § 2281 and § 2284 to decide the constitutionality of New York CPLR 9406(3),[1] alleging that the requirement of actual residence violated the equal protection clause of the 14th Amendment as well as his constitutionally based right to travel. The District Court found that the plaintiff's complaint did not present a constitution-

---

1. N.Y.C.P.L.R. § 9406 (McKinney's Consol. Laws, Supp.1972) provides in pertinent part: No person shall receive said certificate from any committee and no person shall be admitted to practice as an attorney and counselor at law in the courts of this state, unless he shall furnish satisfactory proof to the effect:

. . . . .

3. that he has been an actual resident of the state of New York for six months immediately preceding the submission of his application for admission to practice and that such residence has continued until the final disposition of the application for admission to practice. . . .

al question sufficiently serious to require the convening of a three-judge court.

The facts in this case are undisputed. Appellant and his wife have lived in Tenafly, New Jersey since 1954, with their two children. The appellant concedes that this is his permanent residence. Appellant is a practicing attorney in New Jersey, having been duly admitted to the bar of that state. In 1971 appellant took and passed the New York Bar examination and was certified by the Board of Law Examiners in March, 1972. Thereupon appellant submitted a verified application for admission to the New York Bar, complete with the necessary papers, including proof of actual residence in New York since June 1, 1971. The sole purpose of this temporary residence was to comply with the residence requirement set out in New York CPLR 9406(3). The appellant's residence in New York consisted of a rented room in the Hotel Dixie, 250 West 43rd Street in Manhattan. The appellant spent two to four nights a week there, the rest of the time with his family in New Jersey. Appellant planned to continue this practice until he was admitted to the New York Bar, when he would presumably return to full time residence in New Jersey.

Appellant's application for admission to the bar was denied. The appropriate member of the Committee on Character and Fitness stated:

"I have examined the questionnaire and supporting papers of applicant Clifton C. Tang. I find that Mr. Tang possesses the requisite character and fitness for admission to the Bar and the only impediment to his admission is the fact that he is a temporary resident and not a permanent resident."

Appellant then petitioned the Appellate Division of the Supreme Court of the State of New York for an order to admit him to the Bar. This petition was denied by a court divided 3 to 2. 39 App.Div.2d 357. 333 N.Y.S.2d 964 (1st Dep't 1972). The majority interpreted the "actual residence" requirement of New York CPLR 9406(3) to mean permanent residence, or more accurately, intent to establish permanent residence. The majority found that plaintiff's 10 month residence in Manhattan was "a temporary sojourn with no intent of establishing a permanent residence," and denied plaintiff's petition. The dissent argued that the majority opinion was discriminatory, "in favor of a select class, permanent residents," and against the class to which the plaintiff belonged, bar applicants who are actual but not permanent residents.

Following the decision of the Appellate Division the appellant brought this action in the District Court for the Southern District of New York which dismissed the complaint.

Since this case was decided by the District Court, the Supreme Court has affirmed Suffling v. Bondurant, 339 F. Supp. 257 (D.N.M.), aff'd sub nom. Rose v. Bondurant, 409 U.S. 1020, 93 S. Ct. 460, 34 L.Ed.2d 312 (1972), upon which the District Court largely relied. However *Suffling* did not decide the constitutional issue presented in this case. In *Suffling*, a three-judge court held that the New Mexico Supreme Court rule requiring six months' residence before admission to the bar did not violate the equal protection clause or the constitutionally based right to travel. The court reasoned that six months was a reasonable period for providing the state an opportunity to examine the character and fitness of the applicant. The Supreme Court affirmed without opinion.

The question in the instant case differs from *Suffling* because of the interpretation given to the New York statute by the New York courts, since the Appellate Division interpreted New York CPLR 9406(3) to require *permanent* residence not merely six months' residence. Thus, the New York requirement of actual residence as interpreted by the New York courts is substantially

broader than that approved in *Suffling* and affirmed by the Supreme Court. The question remains whether the broader New York residence requirement had a "rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). We do not reach this issue.

■ The appellant has conceded on oral argument that in his state proceeding, he raised the same federal constitutional issues which he now relies upon in the federal court in this action under 42 U.S.C. § 1983.[2] See Grubb v. Public Util. Comm'n, 281 U.S. 470, 477–478, 50 S.Ct. 374, 74 L.Ed. 972 (1930). There is no question but that Tang could have appealed the three-two decision of the Appellate Division to the New York Court of Appeals on the merits (the interpretation to be given "actual residence" in New York CPLR 9406(3)) as well as on the federal constitutional questions.[3] In the event that he was unsuccessful he would have been assured of a direct appeal to the United States Supreme Court.[4] Tang however abandoned the state courts after the intermediate ruling of the Appellate Division and is now in effect seeking a review of the constitutional issues in a federal court. The district court lacks jurisdiction to review state court determinations of federal constitutional questions and on that ground we affirm the dismissal of the action. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

■■ There is no doubt that after having been denied admission to the New York bar, Tang could have immediately initiated his § 1983 action in the federal district court. In fact this is the usual procedure in cases where state admission requirements have been attacked on constitutional grounds.[5] Instead he selected the state forum to raise the constitutional question which he had the perfect right to do.[6] However,

> [w]hile the lower federal courts were given certain powers in the 1789

---

2. In his petition to the Appellate Division, Tang requested the court to take judicial notice of Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Potts v. Honorable Justices of the Supreme Court of Hawaii, 332 F. Supp. 1392 (D.Hawaii 1971); Webster v. Wofford, 321 F.Supp. 1259 (N.D.Ga.1970); Keenan v. Board of Law Examiners, 317 F.Supp. 1350 (E.D.N.C.1970). He also devoted two pages of his three-page brief to the federal constitutional argument. The dissenting opinion referred specifically to the alleged constitutional infirmity of the New York residency requirement. The silence of the majority opinion on the constitutional issue is of course immaterial. "The question of the constitutional validity of the order was distinctly presented by the appellant's petition and necessarily was resolved against him by the judgment affirming the order. Omitting to mention that question in the opinion did not eliminate it from the case or make the judgment of affirmance any the less an adjudication of it." Grubb v. Public Util. Comm'n, 281 U.S. 470, 477–478, 50 S.Ct. 374, 377, 74 L.Ed. 974 (1930).

3. N.Y.Const. art. 6, § 3(b); N.Y.C.P.L.R. § 5601, as amended (McKinney Supp.1972).

See, e. g., In re Anonymous, 17 N.Y.2d 674, 269 N.Y.S.2d 454, 216 N.E.2d 612 (1966). State courts are of course competent to adjudicate questions of federal constitutional rights. See NAACP v. Button, 371 U.S. 415, 427–428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

4. 28 U.S.C. § 1257(2); see R. Stern & E. Gressman, Supreme Court Practice § 3.4 (4th ed. 1969).

5. E. g., Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971); Suffling v. Bondurant, 339 F.Supp. 257 (D.N.M.), aff'd sub nom. Rose v. Bondurant, 409 U.S. 1020, 93 S.Ct. 460, 34 L.Ed.2d 312 (1972); Harris v. Louisiana State Supreme Court, 334 F.Supp. 1289, 1297–1298 (E.D.La.1971); Lipman v. Van Zant, 329 F.Supp. 391 (N. D.Miss.1971); Webster v. Wofford, 321 F. Supp. 1259 (N.D.Ga.1970); Keenan v. Board of Law Examiners, 317 F.Supp. 1350 (E.D. N.C.1970).

6. Even if an action is commenced in the federal court and that court abstains, argument of the federal constitutional issues without reservation would constitute an election precluding a return to the federal district court.

[Judiciary] Act, they were not given any power to review directly cases from state courts, and they have not been given such powers since that time. Only the Supreme Court was authorized to review on direct appeal the decisions of state courts. Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in [the Supreme] Court of the federal questions raised in either system. Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1970).

The fact that Tang brought his action under § 1983 does not alter the *Rooker* principle.[7] Thus in Anderson v. Lecon Properties, Inc., 457 F.2d 929 (8th Cir.), cert. denied, 409 U.S. 879, 93 S.Ct. 132, 34 L.Ed.2d 133 (1972), the plaintiffs had started a state action in which they initially were successful, but were eventually subject to a writ of mandamus issued by the Minnesota Supreme Court ordering the trial court to vacate its judgment in plaintiffs' favor. They thereupon instituted a § 1983 action in the federal district court alleging that the Supreme Court of Minnesota had *inter alia* violated their federal constitutional rights of due process and equal protection under the Fourteenth Amendment. In affirming the district court's dismissal of the complaint, the court stated:

> To the extent that there was any error of constitutional magnitude in the Minnesota Supreme Court's decision, plaintiffs' sole recourse was to the Supreme Court of the United States.

Federal courts of inferior jurisdiction have no jurisdiction to review alleged errors in state court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); Evanson v. Northwest Holding Company, 368 F.2d 531 (8th Cir. 1966).

457 F.2d at 930. This position has also been adopted in Paul v. Dade County, 419 F.2d 10 (5th Cir. 1969), cert. denied, 397 U.S. 1065, 90 S.Ct. 1504, 25 L. Ed.2d 686 (1970); Brown v. Chastain, 416 F.2d 1012 (5th Cir. 1969), cert. denied, 397 U.S. 951, 90 S.Ct. 976, 25 L. Ed.2d 134 (1970).

There is authority in this circuit, Katz v. Connecticut, 433 F.2d 878 (1970); Taylor v. NYCTA, 433 F.2d 665 (2 Cir. 1970), and elsewhere, Bricker v. Crane, 468 F.2d 1228 (1st Cir. 1972), cert. denied, 410 U.S. 930, 93 S. Ct. 1368, 35 L.Ed.2d 592 (1973); P.I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012 (1st Cir. 1972); Howe v. Brouse, 422 F.2d 347 (8th Cir. 1970); Dean Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (6th Cir.), cert. denied, 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967), which squarely holds that a prior state court decision adjudicating federal constitutional questions is binding as *res judicata* in a subsequent federal action under § 1983.[8]

We do not rest our opinion here on the basis of *res judicata* since the respondent in the state action was the Committee on Character and Fitness of the First Judicial District and in the federal action the appellant has named as defendant the Appellate Division, First Department, as well as the three

---

See England v. Board of Medical Examiners, 375 U.S. 411, 421, 84 S.Ct. 461, 11 L.Ed. 2d 440 (1964). *A fortiori* where the state action is prior in time and the constitutional argument has been made in that court, there is no jurisdiction in the district court to reverse the judgment of the state court which is the relief sought here. The additional prayer for declaratory and injunctive relief cannot salvage an otherwise defective complaint and confer jurisdiction where none exists.

7. Jurisdiction to review in habeas corpus proceedings is not barred by prior state adjudication since the habeas applicant must have first "exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b).

8. The Supreme Court has not yet ruled on the question, denying certiorari in Florida State Board of Dentistry v. Mack, 401 U.S. 960, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971) (dissenting opinion by Mr. Justice White joined by Chief Justice Burger).

justices who voted to deny his petition. It is generally understood that the doctrine of *res judicata* is limited to cases where the same parties are again before the court. Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 861–62 (1952). While it is tempting to consider the substitution here a technicality or to employ the related concept of collateral estoppel, we see no purpose in the exercise. The procedure adopted by the appellant accentuates the need here to apply the doctrine of *Rooker* and its progeny. If appellant had simply sued the Character Committee in a § 1983 action in the federal court, there is substantial authority that *res judicata* would bar his action. It would seem to follow *a fortiori* that the direct suit against the state judiciary raising the very same issues should be dismissed if the principle of comity is to have any meaning. Not only is the practice bizarre but the affront to the state legal system is blunt and unnecessary. The appellant was not dragged into the state court, he freely sought that forum. See Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of State-Court Determinations, 53 Va.L.Rev. 1360, 1385 (1967).

■■ There is no question but that the state court had jurisdiction of the person and subject matter here involved. Moreover this Court has been particularly chary of intrusion into the relationship between the state and those who seek license to practice in its courts. See Erdmann v. Stevens, 458 F.2d 1205 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). Had appellant perfected his appeal, the New York Court of Appeals may well have reversed on the merits or followed the federal constitutional reservations expressed by Presiding Justice Stevens in his dissenting opinion. The district court here is bound by the Appellate Division's construction of the New York rule and judicial manpower may well be needlessly wasted if the opinion of that court does not in fact represent the law of that state.

While appellant's constitutional arguments may well be substantial and we are sympathetic with the plight of one who has lived in a Times Square Hotel for 10 months all to no avail, the concept of federalism should not be scrapped at the whim of the disgruntled suitor.

Affirmed.

HAYS, Circuit Judge (concurring in the result):

I concur in the result on the ground of res judicata.

I do not consider it necessary in order to uphold this result to resort to the vague and uncertain doctrine of "comity."

OAKES, Circuit Judge (dissenting):

While both my colleagues apparently concede that Suffling v. Bondurant, 339 F.Supp. 257 (D.N.M.), aff'd mem. sub nom. Rose v. Bondurant, 409 U.S. 1020, 93 S.Ct. 460, 34 L.Ed.2d 312 (1972), does not render appellant's constitutional claim wholly insubstantial, thereby calling for convocation of a three-judge court, both affirm the lower court's decision dismissing the action.

To reach this conclusion my colleagues rely on two different, although basically related, theories, neither of which were briefed or argued before either this or the district court. Judge Mulligan rests his argument on Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), but he also hints at elements of comity. Judge Hays rests his conclusion on res judicata. These theories are related because both allow that if appellant had not filed a petition with the Appellate Division, then his action here would not be dismissed. Both theories advance a notion that appellant had a choice of remedies—either to appeal the Character and Fitness Committee's determination and interpretation through the New York courts or to bring a § 1983 action in Federal court. Each concludes that Mr. Tang elected to proceed through the New York courts by

filing a petition with the Appellate Division, and goes on to hold that his only route to federal adjudication of his constitutional claims was by appeal to the Supreme Court from a determination of the New York Court of Appeals.[1] What both my colleagues miss, however, is that appellant *never* invoked the jurisdiction of the New York courts for any purpose other than to make an application for admission to the bar, and inasmuch as application to the Appellate Division of the Supreme Court is the sole and exclusive manner by which persons *may be admitted to the New York bar*, Erdmann v. Stevens, 458 F.2d 1205, 1208–1209 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972), making such an application cannot be deemed an election of remedies.

Applications for admission to the New York bar are themselves actions *in* the Appellate Division. To say that its determination denying an applicant's admission cannot be challenged in a § 1983 action because it is res judicata would be to make a wholly unreasonable distinction between (a) those who challenge rules of admission (1) prior even to application, Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971), (2) when denied the opportunity to take the bar examination, Keenan v. Board of Law Examiners, 317 F.Supp. 1350 (E.D.N.C.1970), (3) when denied admission to the bar in states where such decisions are made by administrative agencies, *cf.* Lipman v. Van Zant, 329 F.Supp. 391 (N.D.Miss.1971), or (4) when denied certification after passing the bar exam, as suggested by my colleagues[2]—all of whom may bring § 1983 challenges—and (b) those who challenge rules of admission when denied admission by the court to which the original application was made—the situation in this case.

My colleagues construe appellant's original petition for admission as though it were an appeal of some sort. Rule 9404 of the CPLR, however, provides that "[u]nless otherwise ordered by the appellate division, no person shall be admitted without a certificate from the proper committee . . .." Appellant had been denied a certificate from the committee, but his application for admission had not been denied. Indeed, the committee does not grant or deny the application for admission; "final disposition" of the application is done "by the appellate division" under Rule 9407. Mr. Tang's petition to the Appellate Division was, therefore, not an appeal from the committee. *Cf.* Konigsberg v. State Bar of California, 353 U.S. 252, 254, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957). Rather, it was a petition in respect to his still pending application asking for an order under Rule 9404 admitting him *without certification* or in the alternative directing the committee to certify him. Because appellant in petitioning the Appellate Division was merely following the CPLR Rules gov-

---

1. Judge Mulligan states, "There is no doubt that after having been denied admission to the New York bar, Tang could have immediately initiated his § 1983 action in the federal district court." Yet the plain facts of this case show that Tang *did* initiate his § 1983 action immediately after being denied admission. This is so because only the Appellate Division has the power to deny admission. The committee only denies certification but certification is not indispensable to admission to the bar. CPLR Rule 9404.

2. Indeed, had appellant come to federal court after his denial of a certificate by the committee, the State could well have argued that the anti-injunction statute, 28 U.S.C. § 2283, would operate to bar injunctive relief because appellant would still be involved in a proceeding in a state court. *See also* Chaney v. State Bar of California, 386 F.2d 962, 966 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968), (alternative ground for denying § 1983 action challenging bar admission requirement—plaintiff had been denied Committee's certification, but only state supreme court had power to deny admission; plaintiff thus was not *deprived* of any right).

erning admission to the bar and because the petition was the only means by which to become admitted, appellant should not be considered to have elected to pursue his remedy in the state courts, and be thus precluded from raising his constitutional claim in a federal district court.

Judge Hays states that appellant is foreclosed from raising his constitutional claim in a lower federal court on the ground of res judicata. This cannot be. First, res judicata is an affirmative defense which must be set forth in the pleadings. Fed.R.Civ.P. 8(c). Moreover, the failure to plead res judicata as a defense amounts to a waiver of that defense, and it cannot be raised on appeal for the first time. Badway v. United States, 367 F.2d 22, 25 (1st Cir. 1966). The same is true for collateral estoppel. *Cf.* Federal Savings and Loan Insurance Corp. v. Szarabajka, 330 F. Supp. 1202, 1205 (N.D.Ill.1971). Here defendants-appellees have never pleaded res judicata or even briefed it. To hold against appellant on this basis would frustrate the whole point of Rule 8(c) —to try to prevent surprise to the other party, who in this case has never had an opportunity to brief the point.

More importantly, where the causes of action are different or the parties different, res judicata does not apply and collateral estoppel extends only to those issues actually litigated and decided. Commissioner v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L.Ed. 195 (1876); 1B Moore, Federal Practice ¶ 0.405[3], at 633 (1973). Here, there is no indication

that appellant ever claimed before New York courts that the residency requirement of § 9406 was unconstitutional. Judge Mulligan states that appellant conceded on oral argument that he raised this issue in his state proceeding. My memory may not be so good as my colleague's, but my interpretation of appellant's comments to us and his papers before the Appellate Division in his appendix to the petition is that he merely informed the New York court of the recent United States Supreme Court decisions concerning residency requirements to aid the court in defining "actual" residence. That this was not interpreted as a constitutional attack on the requirement is shown both by the answering affidavit of the chairman of the Committee on Character and Fitness [3] and the complete failure of the Appellate Division majority to address any constitutional attack, one which was hinted at in the dissenting opinion of the Appellate Division, to be sure, but solely for purposes of a statutory construction argument.

Judge Mulligan cites *Rooker* as the basis for his decision. *Rooker,* however, was an action in equity "to have a judgment . . . declared null and void," 263 U.S. at 414, 44 S.Ct. at 149, on the basis of constitutional error. A reading of the case makes clear that the relief there sought was to reverse or modify the actual judgment of the state court. While appellant here does ask for such relief (paragraphs E and F of Complaint), his complaint is not limited to that. He also asks for a declaratory judgment that Rule 9406(3) is unconstitutional and for an injunction restrain-

---

**3.** The concluding paragraph of this affidavit filed with the Appellate Division was:

The sole question thus before the Court is the question as to whether or not residence as used in C.P.L.R. Rule 9406 means permanent residence or domicile, or whether a temporary, and indeed "naked" residence, in the sense of renting a hotel room, is enough to satisfy the intent of the statute.

In Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948), the Court, in considering a defense of res judicata, strongly emphasized that both parties had briefed and argued that issue fully in the lower courts. Appellant here has never been accorded such an opportunity.

ing appellees from further enforcement of it. These latter claims are not covered by the *Rooker* doctrine, because declaring Rule 9406(3) unconstitutional and granting injunctive relief would not disturb the Appellate Division's earlier decision. Our decision would not make appellant a member of the New York bar.

Judge Mulligan hints at considerations of comity to justify denying federal relief to appellant, and cites Erdmann v. Stevens, *supra,* as an example of this court's reluctance to intrude "into the relationship between the state and those who ask license to practice in its courts." *Erdmann,* however, dealt only with an attempt to enjoin *disciplinary* proceedings against an already admitted lawyer; this court denied the injunction on the basis of the sextet of cases led by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Federal courts have not been unwilling to consider constitutional challenges to state bar *admission* rules and practices, and indeed I find no case where a federal court has dismissed a complaint or affirmed a dismissal on the basis of "comity" in a case challenging a state's bar *admission* practices.[4]

In conclusion, therefore, I believe that the district court has jurisdiction and that appellant's constitutional claims are not insubstantial. I cannot agree that when an application for admission to the New York bar is denied by the only body empowered to grant or deny such applications—the Appellate Division—such a denial insulates the challenged rule from constitutional scrutiny in a § 1983 action.

---

4. There is dicta in Erdmann, 458 F.2d at 1210, which, on its face, would apply equally to disciplinary and admission proceedings. However, then Chief Judge Friendly, writing for a three-judge court in Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 124 (S.D. N.Y.1969), aff'd, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971), explicitly rejected a comity-abstention argument in a

direct attack on state bar admission procedures. Even application of the doctrine of "comity" in the disciplinary context in *Erdmann* is open to dispute, moreover, in view particularly of the Supreme Court's recent decision in Gibson v. Berryhill, 411 U.S. 564, 575–577, 93 S.Ct. 1689, 36 L.Ed. 2d 488 (1973). *See* Polk v. State Bar of Texas, 480 F.2d 998, 1001–02 & n. 10 (5th Cir. 1973).