Hugo C. GODOY, Plaintiff,

v.

The Honorable Frank A. GULLOTTA, Presiding Justice of the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, et al., Defendants.

No. 75 Civ. 2894.

United States District Court, S. D. New York.

Dec. 22, 1975.

Brashich, Finley and Postel, New York City, for plaintiff; Deyan Ranko Brashich, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., for other defendants; Stanley L. Kantor, New York City, of counsel.

Ira J. Greenhill, New York City, for defendant Godoy; Kenneth Bender and Lawrence F. Landgraff, New York City, of counsel.

Before FRIENDLY, Circuit Judge, and BONSAL and MOTLEY, District Judges.

PER CURIAM:

In this action based on 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), plaintiff sought declaratory and injunctive relief with respect to § 237 of the New York Domestic Relations Law. That section provides, so far as here material, that in certain types of matrimonial actions the court may direct the husband "to pay such sum or sums of money to enable the wife to carry on or defend the action or proceeding as, in the court's discretion, justice requires . . . ."; there is no corresponding provision for a direction to a wife to pay such sums to the husband. The complaint alleged that this discrimination against males violated the equal protection and due process clauses of the Constitution. A three-judge court was convened pursuant to 28 U.S.C. § 2281.

The question arises in this manner: In April, 1974, defendant Gloria Godoy instituted an action against plaintiff Hugo Godoy in the Supreme Court of New York for Queens County seeking a divorce and counsel fees. The parties stipulated that the action might proceed to judgment without contest and that Gloria reserved rights to claim support and alimony. On October 18, 1974, the state court entered a judgment granting the divorce and awarding Gloria's attorney $1,000 for counsel fees. Hugo appealed from the award to the Appellate Divi-

sion, Second Department. Before the appeal was argued he filed this action in the district court and his counsel addressed a letter to Judge Bonsal, to whom it had been assigned, stating that "in accordance to the Supreme Court's holding in *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 [84 S.Ct. 461, 11 L.Ed.2d 440] (1964), the plaintiff . . . has notified the State Judiciary that he has reserved all constitutional issues for determination exclusively by the Federal Court." A paper to substantially the same effect was filed on July 8 with the clerk of this court. At the same time counsel filed an affidavit making a similar reservation in the Supreme Court of New York for Queens County as part of an opposition to an application for additional attorney's fees and to the Appellate Division for the Second Department as part of an opposition to a motion to strike the record on appeal. On September 22, 1975, the Appellate Division affirmed the judgment against Hugo without opinion. Hugo did not attempt to seek review by the New York Court of Appeals. Although his brief in the Appellate Division, dated December 18, 1974, included a passage which we reproduce in the margin,[1] counsel for the plaintiff here says that this comment was intended simply to amplify his argument that the lower state court had abused its statutory discretion, and avers that the justices of the Appellate Division who heard the argument understood and raised no objection to his "reservation" of constitutional

claims. All parties have moved for summary judgment; the defendants' motions are based in part on the *res judicata* effect of the state judgment.

■ Plaintiff's reliance on *England* in support of his attempted reservation of his constitutional defense is wholly misplaced. That decision permitted a plaintiff to reserve constitutional claims when the federal action had first been instituted and he had been sent to the state court for determination of issues of state law. Moreover, the Supreme Court's decision in *Mertes v. Mertes*, 411 U.S. 961, 93 S.Ct. 2141, 36 L.Ed.2d 681 (1973), summarily affirming the decision of a three-judge court, 350 F.Supp. 472 (D.Del.1972), makes clear that the mere fact that a state court has not considered a constitutional defense will not prevent its judgment from being a bar to a subsequent federal action under the Civil Rights Act.[2]

*Mertes* dealt with a Delaware statute which provided that on the granting of a divorce a wife should be entitled to a share of her husband's property but made no similar direction for the benefit of a husband. On appeal to the Delaware Supreme Court from the property provisions of a decree entered under the statute, the husband for the first time raised a defense based on the equal protection clause. In affirming, the Delaware Supreme Court declined to consider the constitutional question because it had not been raised in the court below and was not a question of such public

1. It is high time that we, where possible, give more than lip service to the Fourteenth Amendment of the Constitution. We recognize that certain discriminatory practices based on sex are imposed on society and must be recognized by the Courts as an unmutable [sic] fact of life. But, we submit, where such factors are not present, i. e., minor children, pregnancies, physical strength and the like, the equal protection mandate of the Constitution precludes the result reached by the Trial Court.

2. It is true that *Mertes* was a summary affirmance and thus may have a less than usual precedential effect on the Supreme Court itself, see *Fusari v. Steinberg*, 419 U.S. 379,

391–92, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (concurring opinion of the Chief Justice). However, as later decisions of the 1974 Term made clear, we in the lower courts are bound by such decisions "until such time as the Court informs us that we are not." *Doe v. Hodgson*, 478 F.2d 537, 539 (2 Cir.), cert. denied, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973), quoting from *United States ex rel. Fein v. Deegan*, 410 F.2d 13, 22 (2 Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969), quoted with approval in *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); see also *Meek v. Pittenger*, 421 U.S. 349, 366–67 n.16, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975).

importance as to be entertained for the first time on appeal. When the lower state court then entered an order to enforce its judgment, the husband began a suit in federal court for an injunction under the Civil Rights Act. Applying established principles of res judicata, as expressed in the leading case of Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (judgment under federal statute subsequently held unconstitutional is res judicata although claim of unconstitutionality had not been raised), the court held, 350 F.Supp. at 474, that:

> For the purpose of res judicata, when the Delaware Supreme Court affirmed the lower court decision, the constitutional issue is treated as though decided adversely to the plaintiff by that court despite its disclaimer of any intention to pass on the merits of the claim.

■ We do not think a different result is required here because the failure of the state court to reach the constitutional claim—if failure there was—occurred as the result of the husband's belated attempt to "reserve" his constitutional defense rather than, as in Mertes, because the defense was raised too late. We recognize the existence of decisions, some rather hard to reconcile with each other,[3] on the possibility, apart from the England situation, of a plaintiff's splitting off, for presentation in a federal court, a constitutional claim assertable under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) from state law claims that are being presented in a state court. See Comment, 88 Harv.L.Rev. 453 (1974). We are aware also of a suggestion in dictum in Lovely v. Laliberte, 498 F.2d 1261, 1263–64 (1 Cir.), cert. denied, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974), that civil cases may exist in which a state court defendant "might preserve a federal constitutional defense and counterclaim" through a reservation

thought to be analogous to that allowed a plaintiff in the England situation.

The merit of this suggestion would have to be most carefully considered in light of the language and purpose of the Civil Rights Act, the general principle against the splitting of claims or defenses, and the arguable inconsistency in policy of such a procedure both with the limitation on federal question removal, 28 U.S.C. § 1441, to cases where the question appears on the face of a well-pleaded complaint, Tennessee v. Union and Planters Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894), and, even more pertinently, with the severe limitations Congress has placed on removal in civil rights cases, 28 U.S.C. § 1443, see Georgia v. Rachel, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). We need not engage in that consideration here since at the very least, in fairness to a plaintiff, any such reservation would have to be made at the beginning of state court proceedings rather than for the first time on appeal. We have been cited to no decision holding that after a judgment has been entered against a defendant, the latter can deprive the plaintiff of the normal res judicata effect of an affirmance by advising an appellate court that he wishes to "reserve" a constitutional claim from the appeal. Since we thus consider Hugo's attempted reservation to have been nugatory, Mertes is controlling on the point that the state judgment operates as res judicata on the husband's equal protection claim even though this was not raised in the trial court and the Appellate Division may not have considered it.

While it is quite possible that, under Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974), see also MTM, Inc. v. Baxley, 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975), we could dissolve

---

**3.** Compare Taylor v. New York City Transit Authority, 433 F.2d 665, 668 (2 Cir. 1970), with Lombard v. Board of Education, 502 F.2d 631

(1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

ourselves as a three-judge court and allow the *res judicata* issue to be decided by Judge BONSAL alone, we see no occasion for doing so. See *Swift & Co. v. Wickham*, 230 F.Supp. 398, 409–10 (S.D. N.Y.1964), appeal dismissed, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), aff'd, 364 F.2d 241 (2 Cir. 1966), *cert. denied*, 385 U.S. 1036, 87 S.Ct. 776, 17 L.Ed.2d 683 (1967).

The defendants' motions for summary judgment are granted and the action is dismissed, on the ground of *res judicata*.