Arthur F. TURCO, Jr.,
Plaintiff-Appellant,

v.

The MONROE COUNTY BAR ASSOCIATION et al., Defendants-Appellees.

No. 438, Docket 76–7380.

United States Court of Appeals,
Second Circuit.

Argued Jan. 24, 1977.

Decided April 21, 1977.

Morton Stavis, New York City (Doris Peterson and Center for Constitutional Rights, New York City, of counsel), for plaintiff-appellant.

William J. Kogan, Asst. Atty. Gen. of N. Y., Albany, N. Y. (Louis J. Lefkowitz, Atty. Gen., and Ruth Kessler Toch, Sol. Gen., Albany, N. Y., of counsel), for defendants-appellees Appellate Division of the Supreme Court, the Justices and the Clerk thereof.

Michael T. Tomaino, Rochester, N. Y. (William D. Eggers, Rochester, N. Y., of counsel), for defendant-appellee Monroe County Bar Association.

Before ANDERSON, OAKES and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Arthur F. Turco, Jr., a member of the New York Bar, appeals from an order of the District Court for the Western District of New York (Burke, *D. J.*) dismissing his amended complaint. Turco was disbarred

by the Appellate Division, Fourth Department, by order dated January 28, 1975, *Matter of Turco*, 46 A.D.2d 490, 363 N.Y. S.2d 349 (4th Dept.), *appeal dismissed*, 36 N.Y.2d 713, 366 N.Y.S.2d 1029, 325 N.E.2d 883, *cert. denied*, 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975). The complaint sought a judgment declaring that the denial of the right of appeal to the Court of Appeals by attorneys in disbarment proceedings is a denial of federal due process.[1] Turco also sought to enjoin enforcement of the disbarment order. The defendants are the Monroe County Bar Association and the Appellate Division and members of each. Jurisdiction is based on 42 U.S.C. §§ 1981, 1983, 1985; 28 U.S.C. §§ 1332, 1343(3), 1343(4); and 28 U.S.C. §§ 2201, 2202.

The District Court temporarily enjoined enforcement of the disbarment order. After Turco in an amended complaint added as defendants the Justices of the Appellate Division, Fourth Department, and the Chief Clerk, the defendants moved to dismiss the complaint, *inter alia*, for lack of jurisdiction and on *res judicata* grounds. The District Court dismissed the complaint, but continued its "stay" until the resolution of this appeal.[2]

## I

Turco was admitted to the New York Bar in December 1967. His office was in New York City but his practice, which in the beginning consisted to a large extent of assisting in the representation of the Black Panther Party and its members, required him to travel throughout the East.

Turco's difficulties with the criminal law began in 1970. In February of that year he was arrested in New York City and charged with possession of weapons, dangerous drugs, hypodermic instruments and with obstructing government administration. He was released on bail. In April he traveled to Canada, apparently without notifying the New York authorities, to make a speech at McGill University. While there he learned that he had been indicted in Baltimore, Maryland, in connection with the murder on July 12, 1969 of Eugene Anderson, a Black Panther who was suspected of being a government informer. Turco was charged with conspiracy to commit murder, assault with intent to murder, common law assault, and two charges of soliciting to commit a felony (murder and kidnapping).

Through an attorney in Maryland he attempted unsuccessfully to negotiate a release on bail if he returned from Canada. He remained in Canada, obtained a false identification card and assumed the name of Leon Wright. He testified later that he had concealed his identity to avoid extradition to the United States. Upon his failure to return to the United States, his bail in the New York case was forfeited, and he was additionally charged with bail jumping.

Seven and one-half months after he entered Canada, Turco was questioned by Canadian authorities in connection with a general widespread investigation of the kidnapping of a Canadian official. The officials accidentally discovered his real identity and learned that charges were pending against him in the United States. Extradition proceedings were commenced. Turco waived extradition and was brought back to Maryland.

In June and July of 1971 he was tried in Baltimore along with Black Panther codefendants, for the slaying of Eugene Anderson. After three weeks of trial the jury could not reach a verdict on the charges against him. His codefendants were acquitted. Another defendant, whose trial had been severed, was convicted. Before his retrial he pleaded guilty, in February 1972, to one charge of common-law assault in satisfaction of all of the charges in the May 1970 indictments. He was sentenced to a term of imprisonment of five years,

---

1. Turco later changed this claim from a denial of due process to a denial of equal protection.

2. Although the District Court termed its action a "stay", it apparently intended it to be a continuation of the injunction restraining enforcement of the disbarment order, rather than merely a stay of its own order.

with execution of the sentence suspended. On his appeal the Court of Special Appeals of Maryland affirmed the judgment of conviction.

In March 1972, after moving to suppress evidence without success, he pleaded guilty in the New York prosecution to the misdemeanor charge of unlawful possession of a weapon, in satisfaction of all the charges against him, the bail jumping charge being withdrawn. He also appealed this conviction and the Appellate Term, First Department, unanimously affirmed the judgment without opinion.

Shortly after Turco's second guilty plea, the Appellate Division, Fourth Department, in April 1972, directed that an investigation be undertaken into Turco's conduct.[3] The Monroe County Bar Association made such an investigation and on May 8, 1973, it filed a petition with the Appellate Division which alleged that Turco "is or may be guilty of professional misconduct, crime, misdemeanor or or felony." Appellant was specifically charged with professional misconduct based on his conviction of two misdemeanors.

A disciplinary proceeding was begun, and Turco responded with a sixty-one page answer which reviewed his personal and professional history, including his assistance in the defense of the Black Panthers, his weapons arrest, the indictments in Baltimore, his incognito stay in Canada and the reasons for his guilty pleas. He moved for the dismissal of the charges against him and, in the alternative, asked for a full evidentiary hearing to determine whether he was guilty of the offenses to which he had pleaded guilty. This request was based on his assertion that he had entered the

guilty pleas under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (*see infra*), and that, accordingly, he had a right to prove that he was, in fact, not guilty of the charges to which he had pleaded guilty.

Attached to the Bar Association's petition, as exhibits, were transcripts of the guilty plea proceedings on each conviction. These transcripts disclosed the other charges against Turco which had been covered by the guilty pleas and included the expected testimony of the government witnesses. Appellant had stipulated in the Maryland prosecution that certain testimony would be given against him if he elected to stand trial a second time. This testimony included details of the gruesome torture and murder of Anderson. According to the government witnesses, Turco participated in the torture and ordered the murder.[4]

■ The Appellate Division found Turco guilty of professional misconduct and denied his request for a hearing to determine whether he was innocent of the charges to which he had pleaded. The court did, however, grant a hearing "in mitigation of the discipline to be adjudged."[5]

Hearings were held before a Referee. Turco testified, among other things, that he was innocent of the specific charges to which he had pleaded guilty. He was not permitted to call witnesses to prove his innocence. He did call forty-eight witnesses, most of whom were character witnesses who had known him only since he came to Rochester.[6] The Referee submitted his report, and appellant was allowed to file an extensive brief and to have oral argument.

3. Turco after his trial in Baltimore in 1971 left New York City and moved to Buffalo and then to Rochester, New York, both of which are in the jurisdiction of the Fourth Department.

4. The man who is alleged to have pulled the trigger had been a codefendant with Turco in the first trial and was acquitted. The vivid narrative of what the prosecution witnesses were prepared to testify to in the respective state trials is available in the Appellate Division opinion. 46 A.D.2d 490, 494–96, 363 N.Y. S.2d 349 (4th Dept. 1975).

5. Under New York law, "an attorney convicted of a criminal offense may introduce evidence in mitigation and explanation in a subsequent disciplinary proceeding, [but] he may not relitigate the issue of his guilt of the offense for which he was convicted." *Matter of Levy*, 37 N.Y.2d 279, 280, 372 N.Y.S.2d 41, 42, 333 N.E.2d 350, 351 (1975).

6. *See* note 3, *supra*.

In denying an evidentiary hearing before it appointed the Referee, the Appellate Division held that *North Carolina v. Alford, supra,* did not support appellant's contention "that he had the right now to prove that he was not guilty of the charges" to which he had pleaded. The court noted that in *Alford,* the Supreme Court merely held that, as a matter of constitutional law, "it is proper for a court to accept a defendant's plea of guilty to a lesser crime in compromise of an indictment, provided the plea is voluntarily made." There was no claim by appellant that either guilty plea was involuntary. The court reiterated this ruling in its final opinion disbarring Turco. 46 A.D.2d at 492, 363 N.Y.S.2d 349.

Turco filed a notice of appeal as of right in the Court of Appeals, upon his constitutional grounds, and, alternatively, moved for an order granting leave to appeal. The Court of Appeals dismissed the appeal taken as of right for want of a substantial constitutional question, 36 N.Y.2d 713, 366 N.Y.S.2d 1029, 325 N.E.2d 883 (1975), and also denied the motion for leave to appeal, 36 N.Y.2d 642, 366 N.Y.S.2d 1026, 325 N.E.2d 880 (1975). Turco's petition for a writ of certiorari was denied. 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975).

While Turco's petition for certiorari was pending and before it was denied, he filed this action in the District Court. As we have noted, the District Court dismissed the action, and this appeal followed. The appellees contend that the action is barred by the doctrines of *res judicata,* judicial estoppel and full, faith and credit. We find that all the constitutional issues raised in this action were raised in the New York Court of Appeals and determined to be without merit.[7]

Appellant contends that he was denied due process of law because he was not afforded an evidentiary hearing on whether the facts and circumstances surrounding his plea of guilty to a misdemeanor established unprofessional conduct. The contention is, in effect, that in every case where an attorney has pleaded guilty to a misdemeanor, he may, nevertheless, in disbarment proceedings prove *de novo* that he is not guilty of the charge to which he voluntarily waived his right to trial by pleading guilty. The point is made that under the doctrine of *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), it is a general rule that collateral consequences of a conviction may not be imposed without a new hearing. But *Baxstrom* and succeeding cases cited in support, *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), deal with additional penalties imposed in the absence of an initial voluntary submission to the consequences. In the case of a plea of guilty, as distinguished from a plea of *nolo contendere,* or a conviction after trial, it is known that the voluntary plea is likely to result in collateral consequences. Here the appellant has never asserted that his pleas of guilty were other than voluntary. And there was discussion of the possibility of disbarment as a result of the plea in each of the proceedings. He contends,

---

**7.** The following federal constitutional claims were raised in the Court of Appeals in Turco's brief for leave to appeal: (1) denial of due process: (a) denial of right to present evidence of his innocence in the disciplinary proceedings; (b) disbarment was based upon allegations, unsupported by any evidence, and not contained in petitioner's charges against him; (c) appellant was foreclosed from repudiating allegations not contained in the charge which were relied on by the Appellate Division; (d) no basis for charging him with criminal convictions that were based on an *"Alford"* plea; and (2) denial of due process and equal protection because his disbarment was discriminatory and based upon mere suspicion and conjecture and not evidence. *See* Notice of Motion, Affidavit and Brief in Support of Motion for Leave to Appeal to the New York Court of Appeals, dated February, 1975, at 40–41.

He also contended in his notice of appeal as of right that if Judiciary Law § 90(8) was construed to deny a lawyer an appeal as of right from a disbarment order of the Appellate Division, the statute would be unconstitutional as a denial of equal protection of the laws, since other litigants than lawyers had the right of at least one appeal. *See* Appellant's Brief *In the Matter of Arthur F. Turco, Jr. v. Monroe County Bar Association,* State of New York Court of Appeals, dated February, 1975, at 11–12.

further, that he pleaded guilty with a declaration of innocence, and that, hence, under *North Carolina v. Alford, supra,* his plea cannot be taken as an admission of the charge to which he pleaded. He further complains, in this regard, that the stipulated testimony of what the state witnesses would testify to should not have been considered in the light of his contentions to the contrary.[8]

We do not suggest that, if the general question were before us as *res nova,* we would consider the due process argument as entirely frivolous. Each of these points was raised in the Appellate Division, however, and decided adversely to the petitioner. The Appellate Division found, upon a study of the sentencing record in Maryland, that appellant had withdrawn his reliance on *Alford* before the guilty plea was accepted by the court. 46 A.D.2d at 498–99, 363 N.Y.S.2d 349. And a disavowal of reliance on *Alford,* though not in such unequivocal terms, was made in the New York plea proceeding, as well. To the extent that the contentions lacked constitutional significance, they are not cognizable in the federal courts. To the extent that they possess such significance, they have already been determined adversely to appellant on the merits.

Turco claims, however, that the review of his constitutional claims in both the state courts and the Supreme Court was illusory, and that to bar his claims on the doctrine of *res judicata* "is effectively to prevent any full consideration of the issues in any forum." He argues that the constitutional review by the state courts is defective because they are "particularly unlikely to consider [their] own procedural deficiencies." We cannot agree. As this court stated in another case involving an attorney in a New York State disciplinary proceeding, "[t]here is no reason to assume that [the attorney's] constitutional rights will not be protected by the Appellate Division . . . ., or, if further review becomes

necessary by the New York Court of Appeals." *Erdmann v. Stevens,* 458 F.2d 1205, 1211 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972).

State courts, as much as federal courts, are bound by and required to follow the United States Constitution. Turco, as appellees did in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), is "urging [the Court] to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities." And like the Supreme Court, "[t]his we refuse to do." *Id.,* 420 U.S. at 611, 95 S.Ct. at 1211.

We hold that the constitutional claims of lack of due process are barred from consideration by the federal district court under the doctrines of *res judicata* and collateral estoppel. Appellant raised the due process points in both the Appellate Division and in seeking review in the Court of Appeals. He emphasizes that he has done so, moreover, as if it were a point in his favor. He does not question that he has raised the *same* claims in the state courts. But he contends, rather, that because he raised these constitutional claims as an *involuntary* respondent in the state court disbarment proceeding, a federal district court has jurisdiction to review the adverse constitutional finding of the New York state courts, including the Court of Appeals, and that this is so even where a petition for certiorari has already been filed and denied by the United States Supreme Court. The contention may not be without some merit in logic, in view of the confusion in this particular field of civil rights review by the lower federal courts, but it has been foreclosed in this circuit by our decision in *Thistlethwaite v. City of New York,* 497 F.2d 339 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974), in which the very argument was made and rejected. There we applied collateral estoppel in a § 1983 case to a constitutional determination by a state court. And in *Tang v. Appellate Division,*

---

**8.** By pleading guilty, appellant knowingly waived his right to cross-examine the prosecution witnesses. He stipulated that their proffered testimony could be considered in the plea bargaining.

487 F.2d 138, 141 (2d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974), we barred relitigation of a denial of admission to the Bar because of lack of jurisdiction, *citing Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *res judicata* (Hays, *J.,* concurring).

We do not deal here, therefore, with the slippery question involving Section 1983 actions where the state litigation was involuntary as to the petitioner, and where the constitutional points could have been raised but were not. On such a state of facts, the Supreme Court still has to render a definitive ruling.[9] Here the claims were actually raised, and pursued right up to the Supreme Court. In these circumstances, we are constrained to hold that the doctrine of *res judicata* is applicable, that petitioner may not have two bites at the cherry, and that the District Court properly dismissed the action.

Nor is there any doubt that appellant actually did raise in the Court of Appeals the very constitutional points he now raises. (*See* note 7, *supra.*)

█ Dismissal by a New York state court because the asserted federal constitutional issues were not "issues which rise to the dignity of constitutional questions" is tantamount to a dismissal of the constitutional issues on the merits. *See McCune v. Frank,* 521 F.2d 1152, 1155 (2d Cir. 1975). And we must assume that the Court of Appeals' denial of an appeal as of right here, as well as of discretion, determined that the constitutional issues specifically raised were insubstantial on the merits.

█ The other argument that requires some discussion is the contention that appellant was denied equal protection of the laws because New York law permits an appeal as of right to every litigant who appears before its courts except an attorney charged in a disciplinary proceeding before the Appellate Division, which for this purpose is the court of first instance. This argument was also raised in the Court of Appeals by appellant, *see* note 7, *supra,* and presented in the petition for certiorari.[10] The claim is barred by the doctrine of *res judicata,* as we have seen. In any event, the same claim was made in *Mildner v. Gulotta,* 405 F.Supp. 182 (3 judge court, E.D.N.Y.1975), which was summarily affirmed by the Supreme Court, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) (with two justices favoring a postponement of consideration of jurisdiction on the merits).

If the affirmance of *Mildner* by the Supreme Court is determinative of the issue raised on the merits, it is binding upon us at least until the Supreme Court speaks further. The appellees contend that *Mildner* was a decision on the merits or, in the alternative, that it stands for the proposition at least, that a post-disbarment action in the federal court will not lie where review by the Supreme Court through the certiorari route is available.

In *Mildner* the Supreme Court did not dismiss the appeal from the three-judge court order but, as noted, summarily affirmed. This is significant because it had previously held that a "direct appeal will lie to this Court under § 1253 from the order of a three-judge federal court denying interlocutory or permanent injunctive relief only where such order rests upon resolution of the merits of the constitutional claim presented below." *MTM, Inc. v. Baxley,* 420 U.S. 799, 804, 95 S.Ct. 1278, 1281, 43 L.Ed.2d 636 (1975). Particularly since Judge Neaher as well as Judge Moore expressed the view that the constitutional

9. *See* dissenting opinion on denial of certiorari in *Florida State Board of Dentistry v. Mack,* 401 U.S. 960, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971). *But cf. Preiser v. Rodrigruez,* 411 U.S. 475, 477, 497, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Mertes v. Mertes,* 411 U.S. 961, 93 S.Ct. 2141, 36 L.Ed.2d 681 (1973) (summarily affirming decision of three-judge court, 350 F.Supp. 472 (D.Del.1972); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 606 n. 18, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

10. *See* Petition in the Supreme Court of the United States for a Writ of Certiorari to the Supreme Court of New York, Appellate Division, Fourth Judicial Department, No. 74–1592, filed June 18, 1975, at pages 15–20.

**522**

claim directed against the New York disbarment procedures was *without merit* and did not support an injunction, we read the affirmance by the Supreme Court in *Mildner*, rendered so soon after the decision in *Baxley*, to have been on the merits and controlling here. *See Godoy v. Gulotta*, 406 F.Supp. 692, 693 n. 2( S.D.N.Y.1975) (three-judge court).

We consider the other issues raised as either barred by *res judicata* or as not meriting discussion.[11]

Affirmed.

OAKES, Circuit Judge (concurring):

I believe that *Thistlethwaite v. City of New York,* 497 F.2d 339 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974), and *Tang v. Appellate Division,* 487 F.2d 138, 141 (2d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974), were wrongly decided, for the reasons stated in my dissenting opinions in those cases. *Thistlethwaite*, like this case, involved an assertion of federal rights in a state proceeding by an *involuntary* party to that proceeding; *Tang* was erroneously supposed to involve an election to pursue state remedies, which an applicant for admission to the bar was said to make merely by applying for admission. I note that *Thistlethwaite* is inconsistent with several cases from other circuits, *see* Theis, *Res Judicata in Civil Rights Act Cases: An Introduction to the Problem,* 70 Nw.L.Rev. 859, 865–66 & n. 35 (1976), and that the Sixth Circuit agrees with the dissenting opinion in *Tang, Getty v. Reed,* 547 F.2d 971, at 974–976 (6th Cir. 1977). But unsound as I believe *Thistlethwaite* and *Tang* to be, emasculative as they are of 42 U.S.C. § 1983 and federal constitutional rights, I am bound to follow them as the law of the circuit. I therefore reluctantly concur in the judgment of the court.

11. We do not discuss abstention in view of our decision for, in this case, abstention would accomplish nothing, the state courts already having taken jurisdiction and rendered judgment on the federal constitutional claims. We recognize that in *Mildner, supra,* there also had been a final judgment of disbarment and that Judge Neaher, for himself, nevertheless favored abstention. This may simply have been intended to suggest that there is no appellate review of disbarment proceedings in the District Court.