J. Jerome OLITT, Plaintiff,

v.

Francis T. MURPHY, Jr., Individually as Presiding Justice of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, and as Administrator concerning the conduct of members of the New York Bar, Arthur Markewich, Myles J. Lane, Samuel J. Silverman, Harold Birns, Joseph P. Sullivan, Theodore R. Kupferman, Herbert Evans, Arnold Fein, Leonard Sandler and Vincent A. Lupiano, Individually, as Associate Justices of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department and as Administrators concerning the conduct of members of the New York Bar, Joseph J. Lucchi, Individually and as Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, James D. Porter, Jr., Individually and as Counsel to the Committee on Grievances of the Association of the Bar of the City of New York, the Association of the Bar of the City of New York, the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, Sheldon Oliensis, Individually and as Chairman of the Committee on Grievances of the Association of the Bar of the City of New York, and William E. Jackson, Richard Kuh, Lola S. Lea, Matthew J. Mallow, Archibald R. Murray, Alfred J. Scotti, William B. O'Brien, Angelo T. Cometa, Emelio P. Gautier, John Donovan, Steven J. Stein, M. Moran Weston, John G. McGoldrick, Geoffrey M. Kalmus, Martin London, Donald B. Straus, Edward J. Babb, John W. Castles III, Edwin J. Wesley, Haywood Burns, Evelyn Halpert, Selvyn Seidel, Helene M. Barnette, John H. Doyle III, William J. Gilbreth, David Ramage, Jr., Alvin H. Schulman,

**Individually and as members of the Committee on Grievances of the Association of the Bar of the City of New York, Defendants.**

**No. 78 Civil 2140.**

United States District Court, S. D. New York.

May 22, 1978.

J. Jerome Olitt, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendant Justices; A. Seth Greenwald, Asst. Atty. Gen., New York City, of counsel.

Saul Friedberg, New York City, for defendants James D. Porter, Jr. and Committee on Grievances.

## OPINION

EDWARD WEINFELD, District Judge.

This is the fourth action instituted in this Court by plaintiff, an attorney who has been the subject of state bar disciplinary proceedings. In this, his latest action, he seeks to stay and void an order of the Appellate Division, First Department, suspending him from the practice of law for three years, which was entered upon a report of a Referee who had conducted a full evidentiary hearing. Plaintiff's three prior actions, discussed hereafter in greater detail, were dismissed under the doctrine of abstention because of the still pending state disciplinary proceedings. Following the dismissal of his third action, plaintiff returned to the state courts and filed as of right an appeal to the New York State Court of Appeals from the order of suspension and also moved for leave to appeal to that Court, both of which were dismissed for want of a substantial constitutional question.

In this current federal action, plaintiff seeks an adjudication of his federal constitutional claims, which he asserts he expressly reserved for this Court's decision under *England v. Louisiana State Board of Medical Examiners.*[1] Basing these claims upon 42 U.S.C., section 1983, plaintiff here seeks declaratory and injunctive relief barring the Appellate Division from imposing any disciplinary sanction upon him pending federal court determination of his federal constitutional claims, absent which he contends the state courts lack jurisdiction; a judgment declaring the Appellate Division order of suspension null and void and a declara-

---

1. 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

tion that the Appellate Division order does not by itself automatically carry with it suspension from practice in the federal courts.[2] Plaintiff's essential claim is an absolute right to have the federal courts consider and pass upon those claims of violation of his federal constitutional rights. As stated by him, the key issue is "whether or not the State Court may discipline me pending the resolution of my Federal claims in this Court as a result of my reserving my rights to litigate those Federal questions involved in the State Court disciplinary proceedings in the United States District Court." The matter is now before the Court on plaintiff's motion for a preliminary injunction and the defendants' cross-motion to dismiss the complaint.[3]

The underlying factual situation which led to plaintiff's suspension was summarized by the Appellate Division in its per curiam order confirming the Referee's finding that plaintiff (there respondent) was guilty of professional misconduct:[4]

The Referee found that in 1965 the respondent, representing a builder, sought to have a zoning change application, submitted on behalf of a rival builder, delayed. The respondent thereafter delivered money in cash to a person who claimed he could effect such delay.

In October 1968, plaintiff, following the assertion of his Fifth Amendment privilege against self-incrimination, was granted transactional immunity and testified before a grand jury concerning his involvement in the above matter. He alleges that the District Attorney, in addition to this grant of immunity, represented that he would neither refer the subject matter of the investigation to the defendant Grievance Committee (the "Committee") nor himself initiate disciplinary proceedings. Allegedly through independent sources, the Committee became aware of plaintiff's involvement with both the factual situation and the grand jury proceedings. In February 1971, an *ex parte* application was made to a Justice of the State Supreme Court, who granted an order which made available the immunized testimony to the Committee. Disciplinary proceedings against plaintiff were instituted in January 1973, in the course of which plaintiff's immunized testimony was introduced as part of the Committee's case.

During the pendency of the disciplinary proceedings, plaintiff commenced the first of his federal actions, contending that the Committee's use of the immunized testimony violated his rights under the Fifth Amendment of the United States Constitution. This Court, per Judge Griesa, dismissed plaintiff's case due to the ongoing state proceedings,[5] citing *Younger v. Harris*[6] and *Erdmann v. Stevens*,[7] the Second Circuit's decision applying *Younger* to bar disciplinary proceedings; Judge Griesa observed that plaintiff's future course should be " 'the traditional method of obtaining adjudication of federal constitutional questions arising out of . . . disciplinary proceedings'—*i.e.*, state court action followed by request for Supreme Court review." Judge Griesa's dismissal of plaintiff's action was unanimously affirmed by our Court of Appeals, which relied not only upon *Younger* and its own decision in *Erd-*

---

**2.** Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1343.

**3.** The grounds of defendants' motion are failure to state a claim, lack of subject matter jurisdiction, "abstention (*Younger* type)" and res judicata-collateral estoppel.

**4.** *Matter of Olitt*, 61 A.D.2d 416, 402 N.Y.S.2d 410, 411 (2d Dep't 1978).

**5.** *Anonymous v. Association of the Bar of the City of New York*, No. 74 Civ. 2398 (TPG) (S.D.N.Y. July 31, 1974), aff'd, 515 F.2d 427 (2d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

**6.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**7.** 458 F.2d 1205 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972).

*mann*, but also upon the then recently decided *Huffman v. Pursue, Ltd.*,[8] stating:[9]

> Whatever federal constitutional questions are involved here can certainly be raised in the state courts and ultimately addressed to the Supreme Court, and appellant proffers no contrary contention.

Plaintiff returned to the state courts, raising his Fifth Amendment claim as well as other federal constitutional claims as affirmative defenses.[10] At the same time, however, plaintiff expressly "reserv[ed] his right to litigate his Federal Constitutional Claims in the Federal court," as suggested in *England v. Louisiana State Board of Medical Examiners*.[11] After plaintiff's motion to dismiss the disciplinary proceedings on the basis of his affirmative defenses was denied by the Appellate Division, the Referee rendered his report sustaining the charges. The Committee moved to confirm the report and impose discipline; plaintiff cross-moved to stay the imposition of discipline, contending that because of his "*England* reservation" the Appellate Division was without jurisdiction to impose discipline prior to resolution of plaintiff's federal claims in federal court.

During the pendency of the foregoing motion and cross-motion, plaintiff commenced his second federal action, seeking an order enjoining the state's imposition of discipline until his federal claims were resolved in the federal courts. Again, the action was dismissed on *Younger/Huffman* grounds.[12] Judge Ward also noted, however, that plaintiff's purported reliance on *England* was "misplaced because the procedures formulated in that case relate specifically to the *Pullman* doctrine of abstention [13] . . . not to the *Younger* doctrine upon which abstention in plaintiff's federal actions has been premised." Upon dismissal of plaintiff's second federal action, the Appellate Division entered an order confirming the Referee's report and ordering plaintiff suspended for a period of three years.

Shortly thereafter, plaintiff commenced his third federal action, again seeking a declaration that the state was without jurisdiction to impose discipline pending resolution in this Court of his federal constitutional claims. Again, plaintiff's case was dismissed on *Younger* grounds [14] as he had not yet exhausted his state appellate remedies as required under *Huffman*.[15] Again, plaintiff was told that his reliance upon *England* was misplaced—indeed, the Court restated the Second Circuit's comment quoted above.

Plaintiff then filed a notice of appeal as of right in the New York State Court of Appeals and also moved there for leave to appeal from the Appellate Division order of suspension.[16] Although continuing to contend that his federal claims were reserved for federal court determination, he claimed an appeal as of right "upon the ground that there is directly involved the construction of the United States Constitution." The proffered claims of violations of federal constitutional rights and also the grounds in support of plaintiff's motion for leave to appeal were: (a) the use of his immunized grand jury testimony in derogation of his Fifth Amendment rights; (b) the District

---

**8.** 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

**9.** *Anonymous v. Association of the Bar of the City of New York*, 515 F.2d 427, 432 (2d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

**10.** *See* text accompanying notes 21–23 *infra*.

**11.** 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

**12.** *Olitt v. Murphy*, No. 78 Civ. 744 (RJW) (S.D. N.Y. Mar. 8, 1978).

**13.** *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**14.** *Olitt v. Murphy*, 449 F.Supp. 322 (S.D.N.Y. 1978).

**15.** *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607–11, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Anonymous v. Association of the Bar of the City of New York*, 515 F.2d 427, 434–35 (2d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

**16.** *See* N.Y.Civ.Prac. Law §§ 5601(b), 5602(a); N.Y.Jud. Law § 90(8).

Attorney's alerting, contrary to his representation, the Grievance Committee to plaintiff's grand jury testimony and his participation in the events, thus bringing into play the Second Circuit's decision in *Palermo v. Warden*, 545 F.2d 286 (2d Cir. 1976), *cert. dismissed*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977); (c) defendants' laches in instituting the disciplinary proceeding in violation of plaintiff's right to a speedy trial; (d) the Referee's exclusion of plaintiff's polygraph expert's testimony, thereby denying plaintiff the right to a fundamentally fair trial; and (e) the *ex parte* order authorizing transmission of the immunized testimony violated plaintiff's due process rights. As already noted, the New York Court of Appeals denied plaintiff leave to appeal and dismissed the appeal as of right on the ground that "no substantial constitutional question is directly involved." Thereupon the order of suspension became effective as of May 10, 1978.

Plaintiff then commenced this, his fourth federal action. The constitutional issues he seeks to have adjudicated are exactly the same five listed above presented to the state courts. He nevertheless contends that since he expressly reserved these issues for this Court's decision by his purported *England* reservation, he is entitled to have this Court pass upon and decide them.

■ Plaintiff's persistent and stubborn reliance upon *England v. Louisiana State Board of Medical Examiners*[17] is misplaced. As plaintiff has been repeatedly told, *England* is simply irrelevant when a federal court has dismissed a case on *Younger/Huffman* grounds. *England* is an adjunct of *Pullman* abstention and provides that where constitutional challenge is made to a state statute in federal court, and that statute is susceptible of construction avoiding or modifying the federal questions presented, the federal plaintiff will be required to obtain an authoritative construction of that statute in the state court; and, if *England* is thus observed, that plaintiff is assured a return to the pending federal suit to litigate the federal claims.[18] When a state proceeding is pending and *Younger* applies, however, the federal case is dismissed and the constitutional claims are to be presented in the state proceedings.[19]

■ Plaintiff not only had the opportunity to present his federal constitutional claims in the state proceedings, in fact he did present them and they were there determined, notwithstanding his *England* reservations. Accordingly, those claims are barred under the doctrine of res judicata.[20]

---

**17.** 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

**18.** *See, e. g., Juidice v. Vail*, 430 U.S. 327, 347, 348, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (Stewart, J., dissenting); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 613, 616 n.2, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (Brennan, J., dissenting); *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 415–16, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (majority); *id.* at 423–37, 84 S.Ct. 461 (Douglas, J., dissenting); *Roy v. Jones*, 484 F.2d 96, 100 (3d Cir. 1973) ("It is apparent that the procedures outlined in *England* were engrafted onto the law of abstention to insure that implementation of the *Pullman* doctrine not run afoul of Congressional mandate."). *See generally* Field, *Abstention in Civil Cases: The Scope of the* Pullman *Abstention Doctrine*, 122 U.Pa.L.Rev. 1071 (1974).

**19.** *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973) ("*Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the

state courts."); *see, e. g., Trainor v. Hernandez*, 431 U.S. 434, 441, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), *quoting Younger v. Harris*, 401 U.S. 37, 45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *quoting Fenner v. Boykin*, 271 U.S. 240, 243–44, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926) ("' "The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." ' "). *See generally* Note, Younger *Grows Older: Equitable Abstention in Civil Proceedings*, 50 N.Y.U.L.Rev. 870 (1975).

**20.** "[A] litigant in a federal court is precluded from relitigating issues which were litigated and determined adversely to him in the prior state court proceeding." *Winters v. Lavine*, 574 F.2d 46, 57 (2d Cir. 1978). *See, e. g., id.* at 56 and cases there cited; *Graves v. Olgiati*, 550 F.2d 1327, 1328–29 (2d Cir. 1977); *Newman v. Board of Educ.*, 508 F.2d 277, 278 (2d Cir.), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975); *Lombard v. Board of*

Three of plaintiff's present claims were offered as affirmative defenses and in support of his original motion to dismiss the proceedings: his Fifth Amendment claim, the *Palermo* violation of promise claim, and his laches claim. When the Appellate Division denied plaintiff's motion to dismiss the disciplinary proceeding, as stated by the Referee, it thereby "resolved . . . all of the legal issues" except as otherwise directed.[21] The Appellate Division did direct the Referee to consider plaintiff's *Palermo* claim; the Referee did this, finding that no promise had in fact been made.[22] The Referee also considered plaintiff's laches claim, finding that the delay in instituting the proceedings resulted in no specific prejudice to plaintiff warranting barring the proceedings.[23] And as stated earlier, the Referee's report was confirmed by the Appellate Division.

These three claims, as well as the other two asserted herein were, as noted above, raised by plaintiff on his appeal to the Court of Appeals. And although that Court dismissed summarily on the ground that no substantial constitutional question was directly involved, that decision was final and was on the merits.[24]

Plaintiff complains that the dismissals of his three prior federal actions on abstention grounds forced him to litigate his constitutional claims in the state courts and that since he did not voluntarily elect to do so, the state court rulings should not be given preclusive impact—in effect, that the double-punch of *Younger* and res judicata should not completely close the federal courts to these federal claims. There may be those who question whether barring section 1983 plaintiffs from lower federal tribunals on principles of res judicata at all makes for sound federalism, especially where the federal plaintiff was an involuntary state court litigant.[25] But as our Court of Appeals noted in *Turco v. Monroe County Bar Ass'n,*[26] that contention "was foreclosed in this circuit by our decision in *Thistlethwaite v. City of New York,* 497 F.2d 339 (2d Cir.), *cert. denied,* 419 U.S.

*Educ.,* 502 F.2d 631, 635–37 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); *Morpurgo v. Board of Higher Educ.,* 423 F.Supp. 704, 710 (S.D.N.Y.1976), *aff'd on opinion below,* Dkt. No. 77–6164 (2d Cir. May 10, 1978).

21. Referee's Report at 7, *Matter of Olitt,* 61 A.D.2d 416, 402 N.Y.S.2d 410 (2d Dep't 1978).

22. *Id.* at 35–43.

23. *Id.* at 32–35.

24. *See, e. g., Winters v. Lavine,* 574 F.2d 46, 60–61 (2d Cir. 1978); *Turco v. Monroe County Bar Ass'n,* 554 F.2d 515, 521 (2d Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977) ("[W]e must assume that the Court of Appeals' denial of an appeal as of right here, as well as of discretion, determined that the constitutional issues specifically raised were insubstantial on the merits."); *Tang v. Appellate Division,* 487 F.2d 138, 141 n.2 (2d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Lecci v. Cahn,* 493 F.2d 826, 830 (2d Cir. 1974).

It cannot seriously be contended that the New York courts did not consider the merits of plaintiff's claims because of his *England* reservation. *England*'s inapplicability to plaintiff's situation is patent; moreover, before the Appellate Division rendered its summary judgment decision or its order confirming the Referee's report, two federal courts had specifically told plaintiff to assert his federal claims in the state proceedings. And by the time plaintiff filed his appeal in the Court of Appeals, two other federal courts had specifically held that plaintiff's reliance on *England* was "misplaced." Finally, plaintiff grounded an appeal as of right on the federal constitutional questions his case presented, and opposed a motion to dismiss the appeal on the same basis. Thus any claim that the New York courts withheld judgment on plaintiff's federal claims—the only issues raised in defense and on appeal—because of plaintiff's *England* reservation is wholly specious.

25. *See, e. g., Turco v. Monroe County Bar Ass'n,* 554 F.2d 515, 522 (2d Cir.) (Oakes, J., concurring), *cert. denied,* 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); *Thistlethwaite v. City of New York,* 497 F.2d 339, 346 (2d Cir.) (Oakes, J., dissenting), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974); Note, Younger *Grows Older: Equitable Abstention in Civil Proceedings,* 50 N.Y.U.L.Rev. 870, 912–21 (1975).

26. 554 F.2d 515, 520 (2d Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977).

1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974), in which the very argument was made and rejected." As the Court explained: [27]

State courts, as much as federal courts, are bound by and required to follow the United States Constitution. Turco, as appellees did in *Huffman v. Pursue, Ltd.*, . . . is "urging [the Court] to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities." And like the Supreme Court, "[t]his we refuse to do." 420 U.S. at 611, 95 S.Ct. at 1211.

Finally, it is noted that our Court of Appeals has commented that it "has been particularly chary of intrusion into the relationship between the State and those who seek license to practice in its courts." [28] Plaintiff's suit here seeks to cast this Court as an appellate court to the highest court in New York State [29]—and in the instant situation there is but one federal tribunal, the Supreme Court of the United States, that has such jurisdiction.

Plaintiff's motion for a preliminary injunction is denied. The motion to dismiss the complaint is granted.

It is so ordered.

---

**27.** *Id.*

**28.** *Tang v. Appellate Division*, 487 F.2d 138, 143 (2d Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). *See, e. g., Turco v. Monroe County Bar Ass'n*, 554 F.2d 515 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); *Erdmann v. Stevens*, 458 F.2d 1205 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972); *Mildner v. Gulotta*, 405 F.Supp. 182

(E.D.N.Y.1975) (three-judge court), *aff'd*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976).

**29.** *See Turco v. Monroe County Bar Ass'n*, 554 F.2d 515, 521, 522 n.11 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); *Tang v. Appellate Division*, 487 F.2d 138, 141–42 (2d Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).